UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYON STAFFORD, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>                      Defendant. | Case No.: 17-cv-01340-AJB-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Doc. No. 19) |

      Pending before the Court is Defendant Rite Aid Corporation's ("Defendant") motion to dismiss Plaintiff Bryon Stafford's ("Plaintiff") first amended complaint ("FAC"). (Doc. No. 19.) Plaintiff opposes the motion. (Doc. No. 24.) Pursuant to Civil Local Rule 7.1.d.1, the Court found this matter suitable for determination on the papers and without oral argument. For the reasons set forth more fully below, the Court **GRANTS** Defendant's motion to dismiss.

///
///
///
///

# I. BACKGROUND[1]

The gravamen of Plaintiff's operative complaint is that Defendant charges a copayment that exceeds its "usual and customary" price for generic drugs. (Doc. No. 18 ¶¶ 7, 8.) Thus, Defendant purportedly engages in the illegal practice of overcharging customers enrolled in public or private health care plans for generic prescription drugs by submitting to third-party payors claims for payment at prices that Defendant knowingly and intentionally inflates. (*Id.* ¶ 8.) As a result, customers like Plaintiff, who purchase generic prescription drugs through third-party plans, pay copayments that are drastically more than Defendant's "usual and customary" prices for the same drugs. (*Id.*)

## A. Prescription Drug Payment Process

In the United States, patients have a public or private health care plan that covers all or a portion of their medical pharmaceutical expenses, also known as a third-party payor. (*Id.* ¶ 21.) The portion that is not covered by the third-party payor is then paid by the patient out-of pocket, which includes copayments. (*Id.*)

The National Council for Prescription Drug Programs ("NCPDP") provides a standardized form for Defendant and pharmacies like Defendant to fill out and send to third-party payors when filling prescriptions. (*Id.* ¶ 25.) This form includes the Transmission Pricing Record Field No. 426-DQ, where Defendant is required to report its "usual and customary" price of the prescription being filled. (*Id.*) According to the NCPDP Reference Manual on Flat File format the term "usual and customary" is defined as the "[a]mount charged cash customers for the prescription exclusive of sales tax or other amounts claimed." (*Id.*) The California Welfare and Institutions Code section 14105.455 similarly defines "usual and customary" as the "lesser of either the lowest price reimbursed to the pharmacy by other third-party payors in California or the lowest price routinely

---

[1] The following facts are taken from Plaintiff's complaint and are accepted as true by the Court for the purpose of resolving this motion. *See Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

offered to any segment of the general public." (*Id.*)

Defendant charges the customer the copayment at the time the customer makes the purchase. (*Id.* ¶ 24.) In general, the copayment cannot exceed Defendant's "usual and customary" price for the drug. (*Id.* ¶ 27.) After the copayment amount is paid by the customer, the remainder of the drug price is reimbursed to Defendant by the third-party payor. (*Id.*) In some situations however, the copayment may only be charged as a percentage of the "usual and customary" price. (*Id.* ¶ 28.) Plaintiff contends that Defendant is well aware of both the definition of usual and customary and how the usual and customary price of a particular prescription drug is ascertained. (*Id.* ¶ 29.)

B.  Background on Plaintiff's Allegation that Defendant Inflates its Usual and Customary Price

Plaintiff is a citizen of San Diego who purchases prescription generic drugs from Defendant's pharmacies located in California. (*Id.* ¶ 17.) To purchase these generic drugs, Plaintiff uses his private health insurance. (*Id.*) Defendant operates a chain of retail drugstores that sells prescriptions drugs, over-the-counter medications, as well as household items, food, and beverages. (*Id.* ¶ 19.)

Beginning in 2006, "big box" retailers with pharmacy departments began offering various generic prescription drugs at significantly reduced prices. (*Id.* ¶ 31.) In response to these drastic reductions, Plaintiff contends that Defendant decided to also reduce the prices of many of its prescription generic drugs through its discount drug program titled Rx Savings Program ("RSP"). (*Id.* ¶ 33.) Defendant's RSP program allows cash-paying customers to purchase their prescription generic drugs for a discounted price—$9.99 for a thirty-day prescription and $15.99 for a ninety-day prescription, with some limited exceptions. (*Id.*)

Defendant's RSP is not a special, limited, or one-time offer. (*Id.* ¶ 34.) Instead, Defendant continuously offers the RSP for multiple benefit years. (*Id.*) Moreover, any cash-paying customer can join the RSP and avail themselves of the discounted prices. (*Id.*)

Beginning in late 2008, and continuing to the present, Plaintiff alleges that

Defendant reports to its third-party payors an artificially inflated "usual and customary" price for the same prescription drugs that Defendant also offers for lower prices under its RSP program. (*Id.* ¶ 51.) Thus, Plaintiff contends that as a customer of Defendant's pharmacies, he pays false and inflated copayments for prescription generic drugs. (*Id.*) This scheme that Defendant employs is allegedly made possible because third-party payors are not informed of the prices Defendant charges its cash-paying customers, including those using the RSP to purchase generic prescription drugs. (*Id.* ¶ 49.) In fact, Plaintiff argues that the third-party payors have no way of determining on their own whether the price Defendant submits as its "usual and customary" price is actually the price offered to its cash-paying members. (*Id.*) Thus, by purportedly failing to report the more common RSP prices as its "usual and customary" prices, Defendant continues to report prices that are significantly higher than the prices it offers to the general public. (*Id.* ¶ 50.)

Plaintiff filed his initial complaint on June 30, 2017. (Doc. No. 1.) Thereafter, on July 28, 2017, pursuant to the joint motion granted by the Court, Plaintiff filed an amended complaint. (Doc. Nos. 15, 16, 18.) Plaintiff alleges causes of action for violation of (1) Unfair Competition law ("UCL") against Defendant on behalf of the subclass; (2) California Consumer Legal Remedies Act ("CLRA") against Defendant on behalf of the subclass; (3) Unjust Enrichment against Defendant on behalf of the class and subclass; and (4) Negligent Misrepresentation against Defendant on behalf of the class and the subclass. (*See generally* Doc. No. 18.) In his prayer for relief, Plaintiff requests the Court certify his action as a class action, award compensatory, consequential, and general damages, grant permanent injunctive relief, and award statutory treble, punitive, or exemplary damages among other things. (*Id.* at 27.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable

4

17-cv-01340-AJB-JLB

legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### III. DISCUSSION

#### A. Plaintiff's Claims are Time-Barred

The Court will first analyze whether Plaintiff's causes of action for UCL, CLRA, unjust enrichment, and negligent misrepresentation are time-barred by their respective statutes of limitations. Defendant argues that each of these claims should be dismissed as they are time-barred. (Doc. No. 19-1 at 31–32.) Plaintiff's complaint alleges that the statute of limitations should be tolled as Defendant engaged in a secret scheme that did not reveal facts that would have put Plaintiff on notice of Defendant's allegedly unlawful conduct. (Doc. No. 18 at 19–20.)

The statute of limitations for the foregoing causes of action are as follows (1) UCL—four years, *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1303 (S.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17208), (2) CLRA—three years, Cal. Civ. Code § 1783, (3) unjust enrichment—three years, *In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F. Supp. 2d

1046, 1072 (N.D. Cal. 2008), and (4) negligent misrepresentation—three years, Cal Civ. Proc. Code § 338(d).

To be entitled to equitable tolling of a statute of limitations a litigant must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). Generally, equitable tolling applies when there is an "excusable delay" by the plaintiff. *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1298 (S.D. Cal. 2011) (granting a motion to dismiss when the plaintiffs did not allege that they did anything to discover the claims or that something prevented them from investigating during the limitations period). Moreover, a plaintiff seeking equitable tolling must allege "specific facts explaining the failure to learn the basis for the claim within the statutory period." *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1079 (E.D. Cal. 2012).

Plaintiff alleges that Defendant began reporting an artificially inflated "usual and customary" price to its third-party payors in late 2008. (Doc. No. 18 ¶ 51.) Thus, Plaintiff's UCL cause of action expired in 2012, and Plaintiff's CLRA, unjust enrichment, and negligent misrepresentation claims were time-barred in 2011. Plaintiff filed his complaint in 2017, well outside of the statute of limitations for his various claims. (Doc. No. 1.) However, cognizant of this issue, Plaintiff's complaint devotes an entire section to arguing that his claims should be tolled. (Doc. No. 18 ¶¶ 70–76.)

Unfortunately, based on the pleadings, the Court finds that Plaintiff has not made any showing that "extraordinary circumstances" prevented him from filing his claims within the statute of limitations. *Karimian v. Caliber Home Loans Inc.*, No. 2:13-cv-07034-CAS-(FFMx), 2013 WL 5947966, at *4 (C.D. Cal. Nov. 4, 2013). Primarily, the Court takes issue with the various contradictions present in Plaintiff's complaint that diminish his defense of equitable tolling.

For example, Plaintiff argues that because Defendant's scheme was kept secret, Plaintiff was unaware of Defendant's unlawful conduct and did not know that he was

paying artificially inflated prices for prescription generic drugs. (Doc. No. 18 ¶ 70.) Additionally, Plaintiff asserts that Defendant <u>actively concealed</u> its RSP prescription generic drug pricing scheme from the public and that Defendant failed to post drug prices in a clear manner and in a way that would alert Plaintiff to the artificially inflated prices charged by Defendant. (*Id.* ¶ 71.) Further, Plaintiff contends that he could not have discovered the alleged unlawful activities at an earlier date because Defendant employed deceptive practices and techniques of secrecy to avoid detection of its activities. (*Id.* ¶ 74.) Moreover, Plaintiff states that "under the guise that its RSP was not available to the general public, [Defendant] unlawfully continued to report its previous higher 'usual and customary' prices to third-party payors." (*Id.* ¶ 43.)

In comparison, the rest of the allegations in Plaintiff's complaint directly contrast the foregoing contentions. Plaintiff pleads that the RSP program listed generic drugs at prices of $9.99 for a thirty-day supply and $15.99 for a ninety-day supply. (*Id.* ¶ 9.) Additionally, Plaintiff alleges that any customer is eligible to participate in the RSP program, that the RSP program is not a special, limited, or one-time offer, and that Defendant has continuously offered the RSP to its customer's for multiple benefit years. (*Id.* ¶¶ 10, 34.)

Taking these allegations as a whole, and comparing them to each other, it would seem that Plaintiff could have discovered, through little effort, that he was paying more for his generic drugs than customers participating in the RSP Program. Moreover, curiously enough, Plaintiff even attaches to his complaint a list of the RSP generic medications and <u>their prices</u> supposedly found through Defendant's website that clearly and prominently advertises the RSP Program; thus further supporting the Court's inference that this information was public and not concealed. (*Id.* at 35.)

In Plaintiff's opposition, he argues that he is entitled to rely on the doctrine of fraudulent concealment to toll the applicable statutes of limitations because the complaint adequately pleads facts that demonstrate that Defendant concealed its unlawful practice of reporting falsely inflated "usual and customary" prices. (Doc. No. 24 at 30.) Additionally, Plaintiff contends that he could not have discovered through the exercise of reasonable

7

17-cv-01340-AJB-JLB

diligence, the existence of the scheme at an earlier point in time. (*Id.* at 31.) Unfortunately, the Court is unpersuaded by these assertions. Again, the Court reiterates that based on the pleadings, the RSP program and its generic drug pricing were publicly advertised and provided to any customer that was paying cash. (Doc. No. 18 ¶¶ 10, 34.) Accordingly, the price difference between what Plainitff was paying and what customer's in the RSP program were paying for their generic prescription drugs could have been easily discoverable. This could have then exposed the alleged misrepresentations regarding the pricing purportedly reported to Defendant's third-party payor.

Furthermore, Plaintiff's use of *Williams v. Countrywide Fin. Corp.*, No. 2:16-cv-04166-CAS(AGRx), 2017 WL 986517, at *7–8 (C.D. Cal. Mar. 13, 2017), to support his contention that the statute of limitations should be tolled under the doctrine of fraudulent concealment is inapplicable. In *Williams*, the court noted that to establish fraudulent concealment, the complaint must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of the fact sufficient to put him on inquiry." *Id.* at *7 (citation omitted). Plaintiff's complaint is devoid of any specific and sufficient allegations regarding the foregoing elements.

Consequently, the Court concludes that Plaintiff has not made any showing of "extraordinary circumstances" that prevented him from filing his claims within the statute of limitations. Thus, Plaintiff has not met his burden of demonstrating that he is entitled to equitable tolling on any of his four causes of action. *See O'Donnel v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) ("Equitable tolling is generally applied to situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.") (internal quotation marks omitted); *see also Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements."); *Marroquin v. OneWest*

*Bank, FSB*, No. CV 12-4688-JFW (FFMx), 2012 WL 12904071, at *1 (C.D. Cal. July 12, 2012) (finding the plaintiff was not entitled to equitable tolling as he failed to allege any facts in his complaint that would justify tolling given that he had the necessary information to discover the misrepresentation before the statute of limitations ran).

## IV. CONCLUSION

As explained more fully above, the Court **GRANTS** Defendant's motion to dismiss **WITHOUT PREJUDICE**.[2] Plaintiff may file a second amended complaint within **twenty-one (21) days** of the date of this Order. Plaintiff is to only correct the deficiencies noted herein and provide the Court with any further factual allegations to demonstrate that equitable tolling applies to his four causes of action. Failure to file an amended complaint will result in dismissal of this case.

**IT IS SO ORDERED**.

Dated: December 19, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[2] The Court notes that it is cognizant that "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (citation omitted). However, within the District Court's discretion, dismissal based on equitable tolling is appropriate here as Plaintiff has failed to allege facts demonstrating that he could not have discovered the alleged violations by exercising due diligence. *See Meyer v. Ameriquest Morg. Co.*, 342 F.3d 899, 902–03 (9th Cir. 2003).