# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYON STAFFORD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>Defendant. | Case No.: 3:17-cv-1340-AJB-JLB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 32)** |

Defendant Rite Aid Corporation's motion to dismiss challenges many of Stafford's allegations regarding Rite Aid's allegedly unlawful two-tiered pricing scheme which caused Bryon Stafford and others to pay artificially inflated copayments for prescription drugs. However, at the motion to dismiss stage, the Court must accept as true all well-pled allegations and draw all inferences in favor of Stafford. Through this lens, the Court finds Stafford plausibly alleged the challenged causes of action. Accordingly, Rite Aid's motion to dismiss is **DENIED**. (Doc. No. 32)

## I. BACKGROUND

Stafford brings a potential class action against Rite Aid for an alleged price discrimination scheme involving Rite Aid's Rx Savings Program, ("Rx Program"). (Doc. No. 30.) The Rx Program, available to the general public, provides access to a

significant price cut on certain generic drugs. (*Id.* ¶ 9.) Stafford alleges Rite Aid failed to report the Rx Program prices to insurers, where they would be used to calculate the co-pays that insured customers pay when they pick up a prescription—the "usual and customary" price. (*Id.* ¶ 11.) This failure, Stafford asserts, distorted the overall prescription calculations, resulting in higher copays. (*Id.*) Based on this alleged scheme, Stafford brings claims for negligent misrepresentation and unjust enrichment, as well as claims under the California Consumer Legal Remedies Act and the California Unfair Competition Law.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III. DISCUSSION

Rite Aid moves to dismiss on five grounds: (1) failure to allege negligent

misrepresentation, (Doc. No. 32-1 at 13); (2) failure to plead CLRA and UCL standing, (*Id.* at 21); (3) failure to allege a CLRA claim, (*Id.* at 23); (4) failure to allege a UCL claim, (*Id.* at 25); and (5) improper request for unjust enrichment, (*Id.* at 31).

## A. Negligent Misrepresentation

Rite Aid alleges Stafford did not adequately plead the elements of negligent misrepresentation. (*Id.* at 13.) Negligent misrepresentation requires (1) a misrepresentation of a material fact, (2) which is made without reasonable grounds for believing it to be true, (3) with the intent to induce reliance on the misrepresented fact, (4) that justifiable reliance occurs, and (5) resulting damage. *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 196 (2012).

### *i. Duty*

Rite Aid argues Stafford failed to show Rite Aid owed him a duty to include the Rx Program prices in its usual and customary ("U&C") prices. (Doc. No. 32-1 at 13.) Rite Aid alleges that there is no legal basis establishing an obligation to report the Rx Program prices, that under California law, programs like the Rx Program are not to be considered in calculating U&C prices, and that retailers are not legally obligated to disclose pricing schemes. (*Id.* at 13–16.) Stafford asserts "The National Council for Prescription Drug Programs ("NCPDP") sets the industry standards for pharmacy claims to [third party payors], and Rite Aid follows these standards at its pharmacies for each prescription transaction." (Doc. No. 34 at 11; Doc. No. 30 ¶ 28.) Stafford also notes that Rite Aid uses a NCPDP standard form "to report its "usual and customary" price for the prescription being filled to [third party payors]." (Doc. No. 34 at 11; Doc. No. 30 ¶ 30.)

Whether or not the NCPDP gives rise to a mandatory duty is not determinative here. To the extent Stafford pleads it, however, the Court is bound to accept that allegation as true. Nevertheless, under California law, "[a] cause of action for negligent misrepresentation will also exist where information is given in a business or professional capacity for such a purpose." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 481 (2003). "California courts have recognized a cause of action for negligent misrepresentation, i.e.,

3

a duty to communicate accurate information, in two circumstances . . . The second situation arises where information is conveyed in a commercial setting for a business purpose." *Id.* at 477.

Here, Rite Aid owes a duty because they are conveying pricing information in a commercial setting for that purpose by reporting pricing to Rx Program participants, prescription consumers, and third party payors. Thus, they have a duty to report that information accurately. Stafford has plausibly alleged that Rite Aid knew about its own two-tiered pricing scheme, failed to communicate the differences in prices it charged Rx Program participants to third-party payors, thus inflating the prices charged to insureds. (Doc. No. 30 ¶¶ 8–13.) Thus, Stafford has plausibly alleged a duty under these theories.

Next, Rite Aid argues a California Health and Safety code precludes a duty to provide information as Stafford asserts. Rite Aid states that discount programs "cannot be deemed to be, or taken into consideration in the calculation of, 'usual and customary' prices required in contracts between providers and insurers. . . " under Cal. Health & Safety Code § 1371.22. (Doc. No. 32-1 at 14.) Stafford claims the provision only applies to "contracts between a health care service plan and a provider of health care that requires the provider accept, as payment from the plan, the lowest payment rate charged by the provider to any patient or third party without regard to whether the payment is cash or insurance-based." (Doc. No. 34 at 13.) Here, Stafford has not alleged any facts pertaining to contracts between any health service plan and a provider of health care. Thus, the Court finds it is inapplicable to the facts at hand.

Finally, Rite Aid points out it has no duty to disclose its pricing structure to customers. (Doc. No. 32-1 at 16.) However, Rite Aid's contention misses the theory of Stafford's case. Stafford does not suggest Rite Aid needs to inform each customer about its pricing structure. Stafford alleges, though, that Rite Aid has a duty to disclose the actual U&C prices, which encompasses both pricing schemes, and failed to do so when it failed to include the lower price point in its reporting. Stafford maintains he has shown several ways in which Rite Aid does have a duty to Stafford to accurately report the U&C prices.

4

(*See* Doc. No. 34 at 14 ("Plaintiff pleads the plausible existence of Rite Aid's duty to disclose through law, industry standard, contract, and Rite Aid's affirmative actions and statements.").) Thus, the Court finds, at this juncture, Stafford has plausibly stated Rite Aid owed him a duty.

### ii. *Misrepresentation or Intent to Deceive*

Rite Aid next contends that Stafford failed to "allege any misrepresentation or intent to deceive plaintiff by Rite Aid." (Doc. No. 32-1 at 17.) Rite Aid points to Stafford's acknowledgment of the Rx Program and its availability as evidence it did not misrepresent anything or deceive Stafford. (Doc. No. 32-1 at 18.) However, Stafford is correct that his (or any consumer's) knowledge of the Rx Program does not mitigate the misrepresentation. (Doc. No. 34 at 16.) The misrepresentation Stafford allegs in his SAC is the inflated U&C prices due to Rite Aid's not reporting its Rx Program prices. (*Id.*; Doc. No. 30 ¶¶ 16, 115.)

With regard to Rite Aid's argument that Stafford failed to plead any intent to deceive, negligent misrepresentation does not include an "intent to deceive" element. *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1476 (1997) ("Negligent misrepresentation is the assertion of a false statement, honestly made in the belief it is true, but without reasonable ground for such belief."). "[T]he broad statements that 'scienter' is an element of every cause of action for deceit, and that an 'intent to deceive' is essential, are untrue, since neither is a requisite of negligent misrepresentation." *Id.* (citing 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 722, p. 821). "Negligent misrepresentation differs from fraud in that it does not require 'intent to deceive or defraud,' but only an 'assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.'" *BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. CV F 08–1086 AWI SMS, 2011 WL 590445, at *3 (E.D. Cal. Feb. 10, 2011) (quoting Cal. Civ. Code § 1572(2)).

Here, Stafford alleges that "Rite Aid had no reasonable grounds to believe that these misrepresentations and/or omissions were true. The prices that Rite Aid reported to third-party payors were substantially (and unjustifiably) higher than the prices it charged under its RSP to cash-paying customers." (Doc. No. 30 ¶ 116.) Thus, the Court finds Stafford has

plausibly pled a misrepresentation occurred.

### iii. Reasonable Reliance

Next, Rite Aid argues Stafford "was required to either plead that the 'usual and customary' price representation was communicated to him and he reasonably relied on it or that it was communicated to his agent, who then relied on it to plaintiff's detriment," but that "[h]e pled neither." (Doc. No. 32-1 at 18.) "It is well established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted." *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). Moreover, Courts have held that justifiable reliance "is ordinarily a question for the jury, but may be decided at the summary judgment stage where the facts support only one conclusion." *Honolulu Disposal Service, Inc. v. American Ben. Plan Adm'rs, Inc.*, 433 F. Supp. 2d 1181, 1190 (D. Haw. 2006).

Here, at the motion to dismiss stage, the Court cannot determine this question of fact. Further, even under the summary judgment standard, the Court does not have enough facts before it to determine whether there is only one conclusion supported. Thus, the Court declines Rite Aid's request to dismiss on this element. Nevertheless, Stafford did allege reliance, stating he "would not have purchased generic prescription drugs from Rite Aid for more than RSP Prices but for Rite Aid's misrepresentations and/or omissions." (Doc. No. 30 ¶ 118.)

### iv. Damages

Rite Aid asserts Stafford did not include enough facts to determine whether his copayments were indeed higher due to Rite Aid's alleged scheme, thus showing he was actually damaged. (Doc. No. 32-1 at 19.) Rite Aid states Stafford "fail[ed], however, to allege any information about his insurance plan, including the manner in which copayments are calculated, or the prescriptions he purchased." (*Id.*) However, at the motion to dismiss stage, the Court is required to take all well-pled allegations as true. *Iqbal*, 556 U.S. at 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Here, Stafford alleged the Rx Program price was "$9.99 for a thirty-day supply." (Doc. No. 30 ¶ 21.) He alleges that because this cost was not included in the usual and customary pricing, he "paid copayments that were either substantially higher than the price of $9.99 for a thirty-day supply, or significantly more than the copayment would have been, had Rite Aid reported the true" U&C price. (*Id.*) As such, Stafford alleges he paid inflated prices, which he "would not have paid . . . but for Rite Aid's wrongful conduct." Taking these allegations as true, the Court finds Stafford plausibly pled damages resulting from Rite Aid's alleged unlawful conduct.

### v. *Economic Loss Doctrine*

Finally, Rite Aid states that the economic loss rule bars Stafford's claim (Doc. No. 32-1 at 20.) The plethora of case law on this issue is in favor of Rite Aid's position. "The economic loss doctrine provides that a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of harm to person or property, or the action falls under an exception." *Strumlauf v. Starbucks Corporation*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016). "Thus, in actions for negligence, liability is limited to damages for physical injuries and recovery of economic loss is not allowed." *Id.*

Stafford points to two cases which have permitted negligent misrepresentation cases to proceed despite this well-established rule. In *Sheet Metal Workers*, the Court held that although CVS's assertion of the economic loss doctrine may be true, "at this stage, the Court must take what the Plaintiffs pled at face value." *Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Health Corporation*, 221 F. Supp. 3d 227, 238 (D. R.I. 2016). CVS had argued "that Plaintiffs' claims stem from CVS's contractual duty to charge them the U & C price." *Id.* The *Sheet Metal Workers* court noted, however, that a recent decision in another case had "rejected the same argument[.]" *Id.*

In *Corcoran v. CVS Health Corporation*, the case *Sheet Metal Workers* was referring to, CVS argued "that Plaintiffs' fraud and negligent misrepresentation claims are nothing more than disguised breach of contract claims, which should be dismissed under the economic loss doctrine." 169 F. Supp. 3d 970, 988 (N.D. Cal. 2016). The Court rejected

that argument, stating:

> To support dismissal, Defendants contend the SAC does not allege any wrongdoing independent of its contractual obligation to report an accurate U & C price to third-party payors. Not so. <u>The gravamen of Plaintiffs' allegations is that CVS created the HSP program to report misleading U & C prices in a manner that contravened industry standards with the intent to deceive Plaintiffs and class members.</u> Plaintiffs additionally allege that CVS misrepresented the availability of the HSP program and their ability to participate therein. These allegations undoubtedly fall outside of CVS's contractual obligations to third party payors.

*Id.* (emphasis added). In quoting this case, the *Sheet Metal Workers* court added the same emphasis as above. *Sheet Metal Workers*, 221 F. Supp. 3d at 238.

Stafford, similar to plaintiffs in *Sheet Metal Workers* and *Corcoran*, pled that Rite Aid "orchestrated a fraudulent scheme that violated industry standards." *Id.* Stafford alleged Rite Aid created the Rx Program—"[t]he lynchpin of the scheme—to report "falsely inflated 'usual and customary' prices for the drugs to third-party payors. . . ." (Doc. No. 30 ¶¶ 9, 11.) Additionally, Stafford alleges Rite Aid does "not advise customers using insurance that the drug being purchased may be cheaper if they paid with cash through the RSP, a program that Rite Aid touts as being helpful for people who do not have insurance or who are uninsured." (*Id.* ¶ 14.) The *Corcoran* court found identical facts "f[e]ll outside of CVS's contractual obligations to third party payors." *Corcoran*, 169 F. Supp. 3d at 988. And thus, while discovery may show "the only basis for the claims is in contract," the Court finds the economic loss doctrine does not bar Stafford's claim at this stage. *Sheet Metal Workers*, 221 F. Supp. 3d at 238. Depending on discovery, Rite Aid could revisit this issue in summary judgment.

**B. CLRA and UCL Standing**

Next, Rite Aid attacks Stafford's standing to plead CLRA and UCL claims, arguing he failed to allege (1) actual reliance on a misrepresentation (2) which was detrimental. (Doc. No. 32-1 at 21.) However, the Court found, *supra* pp. 4–5, 5–6, that Stafford plausibly alleged both the misrepresentation and reliance elements.

Moreover, the Ninth Circuit recently stated "[t]hough 'a previously deceived plaintiff' suing under the UCL, FAL, and CLRA 'may have standing to seek injunctive relief,' the plaintiff must still show 'that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising.'" *Lanovaz v. Twinings North America, Inc.*, 726 Fed. App'x 590 (9th Cir. June 6, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)). Stafford indeed alleged future harm by stating he "anticipates filing future prescriptions for these generic drugs at a Rite Aid pharmacy, and thus, faces the prospect of paying additional inflated copayments in the future if Rite Aid continues its wrongful conduct." (Doc. No. 30 ¶ 22.)

Thus, the Court finds Stafford has alleged standing under both the CLRA and the UCL.

**C.     CLRA Claim**

Rite Aid argues there are "three fundamental flaws with plaintiff's CLRA allegations." (Doc. No. 32-1 at 24.)

The Consumer Legal Remedies Act, ("CLRA"), prohibits certain "unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). In general, to bring a CLRA claim, the plaintiff must show that: (1) the defendant's conduct was deceptive; and (2) that the deception caused defendant to be harmed. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (internal quotation marks omitted), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Stafford alleges violations of CLRA Cal. Civ. Code § 1770(a)(5), (7), (9), and (16). (Doc. No. 30 ¶ 101.) These sections represent specific unfair methods of competition which are unlawful:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have. . . .

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. . . .

(9) Advertising goods or services with intent not to sell them as advertised. . . .

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. . . .

Cal Civ. Code § 1770(a)(5), (7), (9), and (16).

First, Rite Aid argues that "plaintiff does not explain which alleged violations are attributable to which alleged wrongful conduct." (*Id.*) To this argument, Stafford notes Rite Aid did not provide any legal backing for its claim that Stafford was required to plead with such specificity. (Doc. No. 34 at 22.) Federal Rule of Civil Procedure 8 only requires "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." Stafford's SAC has met that threshold.

Second, Rite Aid asserts "there are no specific allegations suggesting that Rite Aid had any obligation to this plaintiff, as a matter of its contracts or otherwise, to consider RSP prices in setting usual and customary prices." (Doc. No. 32-1 at 25.) As to this argument, the Court found, *supra* pp. 3–4, that Stafford plausibly pled Rite Aid owed him a duty. Moreover, Stafford alleges that "Rite Aid owed a duty to Plaintiff, the Class, and Subclass to provide them with accurate information regarding the prices of its generic prescription drugs." (Doc. No. 30 ¶ 114.)

Third, Rite Aid states "the alleged reporting of 'usual and customary' prices to an insurance company that are somehow false does not violate the express provisions of the CLRA." (Doc. No. 32-1 at 25.) For support, Rite Aid cites to a case purporting to hold that "[a]llegations of false or deceptive pricing are not covered by Section 1770(a)(5)." (*Id.*) However, that court held "[m]isrepresentations regarding the value of <u>similar</u> goods are not encompassed by the plain language of sections 1770(a)(5) and (7)." *Jacobo v. Ross Stores, Inc.*, No. cv-15-04701-MWF-AGR, 2016 WL 3483206, at *4 (C.D. Cal. June 17, 2016)

(emphasis added). Here, Stafford has not made comparisons to other goods, but has adequately pled plausible facts supporting a CLRA § 1770(a)(5) claim.

Rite Aid also attacks Stafford's § 1770(a)(9) claim, stating that "plaintiff was sold prescription drugs at the price he was quoted." However, Rite Aid's contention ignores Stafford's allegations. Stafford alleges he was not sold at the price quoted because "Rite Aid presented that it charged him copayments based on the true U&C price for the prescription generic drugs purchased, when, in fact, Rite Aid charged Plaintiff inflated copayments based on fraudulent U&C prices." (Doc. No. 34 at 24.) Thus, unlike plaintiff in *Taylor v. Nike, Inc.*, Stafford made plausible allegations of a § 1770(a)(9) violation. No. 3:16-cv-00661-MO, 2017 WL 663056, at *8 (D. Or. Feb. 17, 2017) ("Here, there are no allegations that the items sold were different than what Nike purported them to be at the time of purchase, or that Ms. Taylor purchased products at a different price than was advertised.")

Finally, Rite Aid challenges Stafford's allegations under § 1770(a)(16) stating that Stafford was required "to allege that Rite Aid represented the allegedly false reported 'usual and customary' price to be in accord with a prior representation," but that "no such allegation appears in the FAC." (Doc. No. 32-1 at 25.) Stafford responds that he pled "Rite Aid represented to Plaintiff that the copayments it charged were calculated based on the true U&C prices reported to TPPs [third party payors], when, in fact, they were not." (Doc. No. 34 at 24.) Again, the Court finds Stafford has plausibly pled facts supporting a § 1770(a)(16) claim.

### D. UCL Claim

Rite Aid asserts Stafford's allegations under the UCL fail as well, stating "Plaintiff has not alleged a statutory or contractual obligation for Rite Aid to calculate 'usual and customary' prices in a way that accounts for [Rx Program] prices." (Doc. No. 32-1 at 25.) Rite Aid goes on to argue that even if Stafford "does plead the existence of such an obligation, it could only be contractual and therefore not form the basis of a UCL claim." (*Id.*) California's statutory unfair competition laws broadly prohibits unlawful, unfair, and

fraudulent business acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).

### i. *Unlawful Prong*

The UCL's unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Thus, the UCL allows injured consumers to "borrow[] violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co.*, 29 Cal. 4th at 1143. Accordingly, to the extent Stafford's CLRA and negligent misrepresentation claims survive, his unlawful UCL claim does, too.

### ii. *Unfair Prong*

The unfair prong has been defined in various ways, including practices which offend public policy, which are immoral or unethical, are oppressive or substantially injurious to consumers. *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). An unfair practice can also be one in which the utility of the practice is outweighed by a victim's harm. *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999). Finally, it has also been defined as "a practice that is (i) substantially injurious to the consumer, where (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury is not one that consumers themselves could reasonably have avoided." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013).

As discussed throughout this Court's order, Stafford has adequately pled he was harmed by Rite Aid's allegedly fraudulent practices, to which there is no benefit to the consumer, but financial benefit to Rite Aid. (*See* Doc. No. 30 at ¶ 48 ("Rite Aid was able to collect artificially inflated copayments from consumers, as well as artificially inflated residual amounts from third-party payors.").) Rite Aid's acknowledgement that its prices were advertised on its website and provided to customers (and thus could have avoided injury) is futile in the face of Stafford's theory of his case. Rite Aid did not disclose it failed

to report the Rx Program prices in the U&C prices, which, according to Stafford, is the underlying misrepresentation and could not have been avoided. Thus, the Court finds Stafford stated a claim under this prong as well.

### iii. *Fraudulent Prong*

Next, the fraudulent prong requires specific allegations giving notice of the alleged misconduct forming the fraud charge, economic injuries resulting from the fraudulent conduct (i.e. causation), and a showing that "members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *Pirozzi*, 966 F. Supp. 2d at 920. Rite Aid persists in their belief that Stafford has not alleged any facts demonstrating "Rite Aid departed from the requirements of a contract with plaintiff's insurer and or concealed the RSP prices." (Doc. No. 32-1 at 28.)

However, again, Rite Aid fails to comprehend Stafford's theory. The fact that Rite Aid "publicly advertised the RSP program and the prices of the generic drugs available under it" does not save Rite Aid from potentially fraudulent conduct: Rite Aid's failure to include the Rx Program pricing in its reporting of the U&C prices which inflated Stafford's copayments, thus "concealing its true U&C price." (Doc. No. 34 at 27.)

Rite Aid also argues Stafford's complaint fails to plead specific facts, such as "when he made his purchases, where he made those purchases, what he purchased, how much he paid, or what, if any, specific deceptive or misleading statements were made. . . ." (Doc. No. 32-1 at 29.) Rite Aid cites a case for support, arguing that Stafford must plead "the name of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (*Id.* (quoting *Lopez v. Wells Fargo Bank, N.A.*, No. 16-cv-811-AJB-DHB, 2017 WL 1336764, at *4 (S.D. Cal. Apr. 5, 2017).) However, that case concerns fraudulent inducement. *Id.* Those requirements make sense when holding a corporation liable for the actions of an employee who is accused of fraudulently inducing a consumer—which were the precise allegations in *Lopez* when a member of Wells Fargo "advised Plaintiff to stop making timely loan payments" leading to foreclosure on plaintiff's home. *Id.* at *1.

However, here, no analogous situation is claimed to exist. Stafford is not alleging that a member of Rite Aid fraudulently induced him into paying his copayment price instead of the Rx Program price. Rather, Stafford alleges Rite Aid created a two-tiered pricing scheme to artificially inflate the U&C prices by purposefully not including the lower Rx Program prices. Thus, requiring Stafford to allege who he spoke to, what they said, and when it was said would be irrelevant.

As to the sufficiency of Stafford's allegations, the Court finds Stafford's complaint is specific enough to give Rite Aid notice of its alleged misconduct.

### iv. Damages under the UCL[1]

Rite Aid also argues the UCL claims must be dismissed because Stafford only claims damages. (Doc. No. 32-1 at 27.) "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co.*, 29 Cal. 4th at 1144. However, "an individual may recover profits obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148. "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Id.* at 1149 (quoting *Krause v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 126–27 (2000) (superseded by statute on other grounds)).

That is precisely what Stafford is alleging here. Stafford alleges Rite Aid received an inflated copayment due to its unlawful actions, and Stafford requests restitution from the "wrongfully acquired portion of the copayments charged by Rite Aid." (Doc. No. 34 at 26.) Although Rite Aid claims Stafford failed to allege "he would not have purchased the prescriptions [sic] drugs if he had known that the calculation of their price did not reflect

---

[1] Rite Aid also argues Stafford's UCL claims should be dismissed because the remedies at law are unsupported under the UCL. (Doc. No. 32-1 at 26–27.) However, this argument again assumes Stafford's claims are grounded only in contract law—a contention the Court rejects.

RSP prices," (Doc. No. 32-1 at 27), Stafford does allege he "would not have paid those inflated amounts but for Rite Aid's wrongful conduct." (Doc. No. 30 ¶ 23.) The Court finds the distinction nominal. The Court also finds Stafford's representation that he is seeking restitution adequate and not grounds for dismissal of his UCL claims.

### E. Unjust Enrichment

In their final argument,[2] Rite Aid states there is no unjust enrichment cause of action, which Stafford pleads. (Doc. No. 32-1 at 31.) However, the Ninth Circuit has suggested otherwise. In *Astiana v. Hain Celestial Grp., Inc.*, the Ninth Circuit held that unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" 783 F.3d 753, 762 (9th Cir. 2015). "The return of the benefit that was unjustly given is what is 'typically sought' in a quasi-contract cause of action." *Id.*

Here, similar to the plaintiff in *Astiana*, Stafford has adequately alleged a quasi-contract cause of action by alleging that Defendant was "unjustly enriched" by its "wrongful conduct" and "the imposition of artificially inflated prices on Plaintiff. . ." such that "Rite Aid's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment." (Doc. No. 30 ¶¶ 108, 110.) Although this may run counter to some of Stafford's theory, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *Astiana*, 783 F.3d at 762–63.

Thus, the Court finds Stafford has plausibly alleged unjust enrichment and declines, at the motion to dismiss stage, to dismiss this claim. Should the prevailing theory become

---

[2] Rite Aid also argues that Stafford "cannot use contracts to bootstrap liability under other theories such as the UCL, CLRA or common law theories such as negligence because [p]ermitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary." (Doc. No. 32-1 at 31–32 (internal quotations and citations omitted).) However, as Stafford states, "Plaintiff is not seeking to hold Rite Aid liable for violating the terms of any contract to which he is not a party." (Doc. No. 34 at 25 n.9.)

rooted in contract, or otherwise change in such a way that makes unjust enrichment unavailable as a cause of action, Rite Aid can revisit this in a summary judgment motion.

## IV. CONCLUSION

At the motion to dismiss stage, plaintiff's burden is relatively low. Stafford only needs to allege plausible allegations supporting each cause of action. Whether or not those allegations prove to be true is not an issue before the Court at this threshold. That inquiry is better suited for a summary judgment motion. At this juncture, the Court must take as true Stafford's allegations regarding Rite Aid's alleged pricing scheme and existence of a duty—which seems to be the thread through many of Rite Aid's challenges. To this end, the Court finds Stafford's second amendment complaint plausibly states a claim for negligent misrepresentation, has standing under both the CLRA and the UCL, has stated claims under both the CLRA and the UCL, and unjust enrichment. Accordingly, Rite Aid's motion to dismiss is **DENIED**. (Doc. No. 32.)

**IT IS SO ORDERED.**

Dated: September 28, 2018

Hon. Anthony J. Battaglia
United States District Judge