UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYON STAFFORD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>Defendant. | Lead Case No.: 3:17-cv-01340-AJB-JLB (Consolidated with Case No. 3:18-cv-00152-AJB-JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL, (Doc. No. 105);**<br><br>**(2) GRANTING EX PARTE MOTION TO STAY PENDING APPEAL, (Doc. No. 183); AND**<br><br>**(3) STAYING PLAINTIFFS STAFFORD AND JOSTEN'S MATTERS** |

Presently pending before the Court are: (1) Bryon Stafford ("Stafford") and Robert Josten's ("Josten") (collectively, "Plaintiffs") unopposed motion to appoint interim co-lead class counsel. (Doc. No. 105), and (2) Defendant Rite Aid Corporation's ("Rite Aid") *ex parte* motion to stay pending appeal. (Doc. No. 183.) Plaintiff Stafford filed an opposition

1

to Rite Aid's *ex parte* motion. (Doc. No. 185.) For the reasons set forth in detail below, the Court **GRANTS** (1) Plaintiffs' unopposed motion to appoint, (2) **GRANTS** Rite Aid's *ex parte* motion, and (3) **STAYS** Plaintiffs' matters pending Rite Aid's appeal.

## I. BACKGROUND

This is a putative class action filed against Rite Aid Corporation and Rite Aid Hdqtrs. Corporation ("Rite Aid HQ") for an alleged deceptive and unfair pricing scheme involving Rite Aid's Rx Savings Program. (Third Amended Complaint ("TAC"), Doc. No. 145.)

As general background, the overwhelming majority of Rite Aid's clients are enrolled in either a private or public health care plan that covers some or all medical and pharmaceutical expenses. (*Id.* ¶ 28.) In almost every one of these plans, the cost of prescription drugs is shared between the third-party payor ("TPPs") (i.e., the health insurance plan) and the actual user of the drug (i.e., the plan participant). (*Id.*) When a plan participant fills a prescription at a pharmacy under a third-party health care plan, the plan pays a portion of the cost, and the plan participant pays the remaining portion of the cost directly to the pharmacy as a copayment. (*Id.*) Because of the cost savings associated with generic drugs as opposed to brand name drugs, TPPs incentivize plan participants to purchase generic drugs by offering a lower price, which in turn, results in a lower copayment. (*Id.* ¶ 6.) By law, Rite Aid cannot charge a copayment that exceeds its "usual and customary" price, which is generally defined within the pharmaceuticals industry. (*Id.* ¶ 7.) The process by which financial responsibility between TPPs and plan participants is determined is called "adjudication." Rite Aid contracts with pharmacy benefit managers ("PBMs") and TPPs to "adjudicate" the claims of customers for prescription drug coverage. (Doc. No. 78-1 at 7.) The contracts specify Rite Aid's obligations to the TPP or PBM when submitting claims for prescription coverage at the point of sale, as well as the amount Rite Aid will receive as payment when filling prescriptions. (*Id.* at 8.) Generally, the TPP or PBM determines the amount of reimbursement according to those contracts as well as the copayment or deductible amount. (*Id.*) The TPP or PBM then transmits the information

back to Rite Aid, instructing Rite Aid on the amount to collect from the customer. (*Id.*)

Plaintiffs allege Rite Aid overcharges customers for generic prescription drugs by submitting to TPP/PBMs claims for payment at prices that Rite Aid has inflated above its "usual and customary" prices. (TAC ¶ 8.) As a result, customers who purchase generic prescription drugs through third-party plans pay copayments that are significantly higher than Rite Aid's "usual and customary" prices for those same drugs. (*Id.*) Central to this scheme, according to Plaintiffs, is the Rx Savings Program. (*Id.* ¶ 9.)

The Rx Savings Program allows cash-paying customers (customers who pay for prescription drugs without using insurance) to buy the most commonly prescribed generic drugs at significantly discounted prices. (*Id.*) The Rx Savings Program prices are often significantly lower than the prices Rite Aid reports to health insurance companies as Rite Aid's "usual and customary" prices. (*Id.*) Plaintiffs claim Rite Aid was required by law to report to the TPP/PBMs the Rx Savings Program prices as Rite Aid's "usual and customary" prices for the prescription generic drugs. (*Id.* ¶ 11.) The failure to do so distorted the overall prescription calculations, resulting in higher copayments to customers. (*Id.*) Based on this alleged scheme, Plaintiff Stafford brings claims against Rite Aid for: (1) negligent misrepresentation, (2) unjust enrichment, (3) violation of the Consumer Legal Remedies Act ("CLRA"), (4) and violation of the California Unfair Competition Law ("UCL"). Plaintiff Josten brings similar claims, and asserts an additional claim for declaratory and injunctive relief. (Doc. No. 146 at 42.)

## II. PROCEDURAL HISTORY

Plaintiff Stafford's Complaint was first filed in June 30, 2017. (Doc. No. 1.) A First Amended Complaint was filed on July 28, 2017, (Doc. No. 18), and Rite Aid moved to dismiss for failure to state a claim. (Doc. No. 19.) The Court granted Rite Aid's motion to dismiss with leave to amend. Plaintiff Stafford filed a Second Amended Complaint on January 9, 2018. (Doc. No. 30.) On January 23, 2018, another plaintiff, Plaintiff Josten, instituted a substantially similar action against Rite Aid. (*See* Case No. 18-cv-00152-AJB-

JLB, Doc. No. 1.) Plaintiff Stafford and Josten's actions were consolidated by the Court on October 24, 2019. (Doc. No. 101.)

On January 23, 2018, Rite Aid filed its second motion to dismiss Plaintiff Stafford's Second Amended Complaint for failure to state a claim. (Doc. No. 32-1.) On September 28, 2018, the Court denied Rite Aid's motion to dismiss, holding that Plaintiff Stafford plausibly stated a claim on all four causes of action. (*Id.*) On June 17, 2019, Ride Aid then filed a motion to compel arbitration. (Doc. No. 78.) On February 25, 2020, the Court denied the motion to compel arbitration, holding Rite Aid failed to show equitable estoppel should apply, thus Rite Aid did not have a right to arbitrate. (Doc. No. 134.) The Court concluded that in any event, Rite Aid waived any rights to compel arbitration by filing multiple motions to dismiss on the merits. (*Id.*) On March 24, 2020, Rite Aid filed a notice of appeal of the Court's order denying the motion to compel Stafford to arbitration. (Doc. No. 148.)

Rite Aid similarly filed two motions to dismiss in Plaintiff Josten's case before filing a motion to compel arbitration, which is currently pending before the Court. (Case No. 18-cv-00152-AJB-JLB, Doc. Nos. 15, 28.)

On March 3, 2020, before Rite Aid filed the notice of appeal, the parties filed a joint motion for leave to amend both Stafford's and Josten's Complaints to add party defendant Rite Aid HQ, which was granted by the Court. (Doc. No. 136.) Rite Aid HQ also filed motions to compel Stafford and Josten to arbitration, which currently pending before the Court, along with Rite Aid's motion to compel Josten to arbitration. (Doc. Nos. 114, 163, 166.)

On June 10, 2020, Rite Aid filed an *ex parte* motion to stay pending resolution of its appeal to the Ninth Circuit. (Doc. No. 183.) Stafford opposed. (Doc. No. 185.) This order follows.

**III. PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL**

First, Stafford and Josten seek an order appointing Robbins Geller Rudman & Dowd

4

LLP ("Robbins Geller") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Interim Co-Lead Class Counsel. (Doc. No. 105.) Rite Aid filed a non-opposition to the motion. (Doc. No. 108.)

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Where multiple firms seek appointment as class counsel, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). The Court must consider various factors in appointing class counsel, including: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). In addition the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Having reviewed, Plaintiffs' briefing and authority, and in light of the non-opposition, the Court concludes that Robbins Geller and Scott + Scott are adequate and able to represent the interest of the proposed class. As such, Plaintiffs' motion to appoint is **GRANTED**.

## IV. RITE AID'S *EX PARTE* MOTION TO STAY

Next, the Court will turn to Rite Aid's request that the Court stay Stafford's and Josten's proceedings pending its appeal to the Ninth Circuit. (Doc. No. 183.)

### A.  Legal Standard

The Federal Arbitration Act (FAA) reflects a strong federal policy favoring arbitration. *See* 9 U.S.C. § 16(a); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 n.2 (9th Cir. 1992). To further this federal policy, section 16 of the FAA "endeavors to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 961 (9th Cir.

5

2007) (quoting *Bushley v. Credit Suisse First Boston.*, 360 F.3d 1149, 1153 (2d. Cir. 2004)). Accordingly, under the FAA, a party may immediately appeal a court order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a). This ensures that the issue of whether a dispute is to be resolved through arbitration is decided before excess time, money, and judicial resources are spent in litigation. *See C.B.S. Employee Federal Credit Union v. Donaldson*, 716 F. Supp. 307, 310 (W.D. Tenn. 1989).

The system created by the FAA allows the district court to stay the proceedings pending an appeal from its refusal to compel arbitration if the court finds that the motion presents a substantial question for the court of appeal to consider. *See Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir. 1990). Courts generally consider four factors when determining whether to grant a stay pending the appeal of a civil order: first, whether the applicant has made a strong showing that he is likely to succeed on the merits; second, whether the moving party will be irreparably injured absent a stay; third, whether a stay will substantially injure the opposing party; and fourth, whether the public interest favors a stay. *See id.* (approving *C.B.S.*, 716 F. Supp. at 309 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1986)).

**B.     Analysis**

**1.     Whether Rite Aid Has Made A Strong Showing That It Is Likely To Succeed On The Merits**

To satisfy the first prong, the applicant must make "a strong showing that he is likely to succeed on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). That showing must establish "more than a mere possibility of relief." *Id.* at 967 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). However, the standard does not require much more than that; the applicant must only show a "fair prospect" of success or be "reasonably likely" to succeed. *Id.* (quoting *O'Brien v. O'Laughlin*, 557 U.S. 1301, 1302 (2009)). Certainly, the applicant "need not demonstrate that it is more likely than not that he will

win." *Id.* at 967.

Alternatively, if an applicant cannot reach this threshold, they may still comply with the first prong by establishing a "substantial case" for relief. *Id.* at 970. A "substantial case" exists where the applicant's claims raise "serious legal questions," i.e., "issue[s] of first impression" or issues causing a split in legal authority. *Wilson v. Huuuge, Inc.*, No. 3:18-CV-05276-RBL, 2019 WL 998319, at *2 (W.D. Wash. Mar. 1, 2019). An applicant may only rely on the "substantial case" threshold where "the balance of hardships tips sharply in the [applicant's] favor." *Leiva-Perez*, 640 F.3d at 970.

Here, Rite Aid argues the issues presented to the Ninth Circuit involves matters of first impression including the questions of (1) whether a plaintiff can plead around California's equitable estoppel doctrine while pursuing claims that "depend on the contract's terms," (2) whether sophistication or lack thereof of a plaintiff "affects the enforceability of a delegation clause," and (3) to "what extent litigation conduct constitutes waiver when a motion to compel arbitration is based on equitable estoppel." (Doc. No. 183-1 at 10–13.) Furthermore, Rite Aid states that while the Ninth Circuit has not addressed some of these issues, some of these questions have been resolved differently by other Circuits. (*Id.* at 11.) While Plaintiff does not believe these issues constitute substantial questions that raise genuine matters of first impression, (Doc. No. 185 at 7), the Court holds that the issues at the very minimum, present serious legal questions, not frivolous in nature. Thus, this factor weighs in favor of a stay.

### C. Whether Rite Aid Will Be Irreparably Injured Absent A Stay

Next, the second factor is whether the moving party, Rite Aid, will be irreparably injured absent a stay. Leiva-Perez, 640 F.3d at 964. Here, Rite Aid's main purpose in appealing this Court's order is to avoid litigation by obtaining a ruling from the Ninth Circuit that the Rite Aid may compel Plaintiff to arbitration. Therefore, arbitration may be rendered meaningless if Rite Aid is required to litigate this case pending the appeal. As the Ninth Circuit has stated, if the "party must undergo the expense and delay of a trial before

7

being able to appeal, the advantages of arbitration–speed and economy–are lost forever." *See Alascom*, *Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (finding the consequence serious, perhaps, irreparable, and effectually challenged only by immediate appeal). Because Rite Aid will lose the advantages of arbitration if the Ninth Circuit ultimately reverses the order, the harm to Rite Aid would be irreparable. Thus, the Court finds that the second factor weighs in favor of granting the motion to stay.

### D.   Whether A Stay Will Substantially Injure The Opposing Party

As to the third factor, Plaintiff Stafford clearly will suffer some prejudice if his action is delayed during the pendency of the appeal in the Ninth Circuit. However, "[w]hen a defendant appeals an order refusing to compel arbitration, the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court during pendency of appeal." *Eberle v. Smith*, No. 07-CV-0120 W(WMC), 2008 WL 238450, at *3 (S.D. Cal. Jan. 29, 2008). However, "a plaintiff may be able to show prejudice by citing particular witnesses or documents that may be adversely affected by a stay." *Id.* Plaintiff has not identified any specific evidence, arguing only generally that his ability to access evidence will be prejudice as the case becomes more stale. Thus "any risk of lost evidence is entirely speculative at this point." *Murphy v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC, 2008 WL 8608808, at *3 (C.D. Cal. July 1, 2008). Accordingly, the Court concludes that this factor too supports stay.

### E.   Whether The Public Interest Favors A Stay

The fourth factor is whether the issuance of a stay is in the public interest. In a case such as this, where a party is seeking a stay to appeal the denial of a motion to compel arbitration, the Court concludes that the public interest ultimately tips the balance in favor of the appealing party, Rite Aid. Congress, through the FAA, has expressed that arbitration is in the public interest. *See A.G. Edwards & Sons, Inc., v. McColloueh*, 967 F.2d 1401, 1404 n.2 (9th Cir. 1992). By specifically allowing for an immediate appeal from a decision

denying arbitration, Congress has further indicated that all questions of whether a dispute should be arbitrated should be resolved before time and money is spent in litigation.

Additionally, the interest in judicial economy and efficiency urge a stay in proceedings pending appeal. As the district court in *C.B.S.* observed, it "does not make sense for this Court to expend its time and energy preparing this case for trial and possibly trying it only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." 716 F. Supp. at 310. A stay promotes the public interest in the efficient allocation of judicial resources. Thus, the fourth factor weighs in favor of granting a stay.

### F. Plaintiff Josten's Action Is Also Stayed

Rite Aid additionally seeks a stay in Plaintiff Josten's action pending the resolution of Rite's motion to compel Josten to arbitration. But in the interest of judicial economy and simplification of issues of law, the Court concludes that a stay in Josten's case pending resolution of Rite Aid's appeal in Stafford's action appropriate instead.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255, for the same). Courts have the power to consider stays sua sponte. *See, e.g., Fed. Home Loan Mortg. Corp. v. Kama*, No. 14-00137 ACK-KSC, 2016 WL 922780, at *8-9 (D. Haw. Mar. 9, 2016) (ordering a stay, sua sponte, of the proceedings pending resolution of related cases before the Ninth Circuit because resolution of those cases "w[ould] likely involve an analysis of" obscure issues, thereby "provid[ing] further guidance" to the court with respect to the case in question); *see also S.E.C. v. Chestman*,

861 F.2d 49, 50 (2d Cir. 1988) (noting that the district court can enter an order staying discovery sua sponte).

The Court finds that staying proceedings pending the appeals of related cases will serve the interests of judicial economy and will help to clarify the issues and questions of law going forward. *See Landis*, 299 U.S. at 256 ("True, a decision in the case then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all."). Currently pending before the Court are Rite Aid's motion to compel Josten to arbitration, in addition to newly added party, Rite Aid HQ's two motions to compel both Stafford and Josten to arbitration. The resolution by the Ninth Circuit of whether Stafford's case should proceed in federal court will more than likely inform whether Josten will proceed to arbitration as well. Indeed, all the pending motions involve the same issues and questions of law that will be settled by the Ninth Circuit on appeal. Therefore, the same reasons that support a stay in Stafford's case also supports a stay in Josten's case as well.

## V. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiffs' unopposed motion to appoint Robbins Geller and Scott+Scott. (Doc. No. 105.) Additionally, having weighed the relevant factors and considered the arguments of the parties, the Court concludes that Rite Aid has demonstrated that a stay is appropriate. Thus, Rite Aid's *ex parte* motion to stay is **GRANTED**, and the matter is **STAYED** pending resolution of Rite Aid's appeal. The Court also exercises its discretion, and additionally **STAYS** Josten's matter pending resolution of Rite Aid's appeal as well.

**IT IS SO ORDERED.**

Dated: July 30, 2020

Hon. Anthony J. Battaglia
United States District Judge

11

3:17-cv-01340-AJB-JLB
(Consolidated with Case No. 3:18-cv-00152-AJB-JLB)