1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL (199706)
ROBERT R. HENSSLER JR. (216165)
ARTHUR L. SHINGLER III (181719)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
davidm@rgrdlaw.com
bhenssler@rgrdlaw.com
ashingler@rgrdlaw.com

ROBBINS LLP
GEORGE C. AGUILAR (126535)
GREGORY E. DEL GAIZO (247319)
5060 Shoreham Place, Suite 300
San Diego, CA  92122
Telephone:  619/525-3990
619/525-3991 (fax)
gaguilar@robbinsllp.com
gdelgaizo@robbinsllp.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYON STAFFORD and ELIZABETH DAVIS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| RITE AID CORPORATION and RITE AID HDQTRS. CORP., | ) ) ) |
| Defendants. | ) ) ) ) |

Lead Case No. 3:17-cv-01340-TWR-AHG
(Consolidated with No. 3:18-cv-00152-TWR-AHG)

CLASS ACTION

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DATE:      January 25, 2024
TIME:      1:30 p.m.
CTRM:     3A/Third Floor
JUDGE:    Hon. Todd W. Robinson

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   THE PROPOSED CLASS ...................................................... 2

III.  STATEMENT OF COMMON, CLASSWIDE EVIDENCE ........................ 3

     A.    The U&C Price Exists to Ensure that Insured Customers and Third-Party Payers Do Not Pay More to Receive Prescription Drugs than Cash Customers ........................... 3

     B.    Starting in 2006, Rite Aid Competitors' U&C Pricing Decisions Jeopardized a Significant Rite Aid Revenue Source ........................... 5

     C.    Rite Aid Was Required to Include Its RSP Prices When Determining the U&C Price for RSP Drugs Because Rite Aid Offered RSP Prices to Cash Customers ........................... 7

     D.    Rite Aid Knew It Should Include the RSP Price When Determining the U&C Price to Report for RSP Drugs ........................... 8

IV.   LEGAL STANDARD ........................................................... 10

V.    THE PROPOSED CLASS SATISFIES RULE 23(a)'s PREREQUISITES ............................................................... 11

     A.    The Proposed Class Satisfies the Numerosity Requirement .............. 11

     B.    Questions of Fact and Law Are Common to the Proposed Class ....... 11

     C.    The Proposed Class Representatives' Claims are Typical of the Proposed Class's Claims ........................... 12

     D.    The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members ........................... 13

          1.    The Proposed Class Representatives Are Adequate ................. 13

          2.    Plaintiffs' Counsel Are Adequate and Should Be Appointed as Class Counsel ........................... 14

VI.   A MECHANISTIC METHODOLOGY THAT IS CONSISTENT WITH PLAINTIFFS' THEORY OF LIABILITY EXISTS TO CALCULATE CLASSWIDE DAMAGES ........................... 15

VII.  THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3) ........................... 17

     A.    Common Questions Predominate over the Class's CLRA and Negligent Misrepresentation Claims ........................... 17

4890-0137-8692.v1

**Page**

       1.    Common Evidence Will Be Used to Prove Plaintiffs'
           CLRA Claims ................................................................ 18

       2.    Common Evidence Will Be Used to Prove Plaintiffs'
           Negligent Misrepresentation Claims ............................ 22

   B.    A Class Action Is a Superior Method of Adjudicating This
       Dispute .............................................................................. 24

VIII.   CONCLUSION ................................................................ 25

4890-0137-8692.v1

# TABLE OF AUTHORITIES

**Page**

CASES

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ........................................................................ 21

*Alger v. FCA US LLC*,
334 F.R.D. 415 (E.D. Cal. 2020) ....................................................................... 18

*Ali v. Franklin Wireless Corp.*,
2023 WL 25718 (S.D. Cal. Jan. 3, 2023) ..................................................... 11, 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................... 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ..................................................................................... 11, 22

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ........................................................... 13, 14, 15

*Bailey v. Rite Aid Corp.*,
338 F.R.D. 390 (N.D. Cal. 2021) ..................................................... 18, 19, 21, 22

*Bloom v. City of San Diego*,
2021 WL 8053533 (S.D. Cal. June 8, 2021) ........................................................ 3

*Brazil v. Dell Inc.*,
2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ................................................... 23

*Brickman v. Fitbit, Inc.*,
2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) ....................................... 19, 22, 23

*Brown v. Electrolux Home Prods., Inc.*,
817 F.3d 1225 (11th Cir. 2016) ......................................................................... 16

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................... 19

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ............................................................................. 22

4890-0137-8692.v1

**Page**

*Clevenger v. Welch Foods Inc.*,
   342 F.R.D. 446 (C.D. Cal. 2022) ........................................................21

*Collins v. Rocha*,
   7 Cal. 3d 232 (1972) ...........................................................................23

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ...................................................................... 15, 16

*Corcoran v. CVS Health Corp.*,
   779 F. App'x 431 (9th Cir. 2019).....................................................2, 13

*Elkies v. Johnson & Johnson Servs., Inc.*,
   2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ................................16

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)..................................................... 10, 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ...........................................................................18

*Garcia v. Wal-Mart Assocs., Inc.*,
   2019 WL 4605714 (S.D. Cal. Aug. 26, 2019) ................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................... 13, 17

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)..........................................................21

*Humana Health Plan, Inc. v. Rite Aid Hdqtrs.*,
   AAA No. 01-19-0000-4057, slip op. (Apr. 22, 2022)................6, 7, 10

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (Cal. Ct. App. 2009) ....................................21

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) .....................................................19

3:17-cv-01340-TWR-AHG

**Page**

*Joint Equity Comm. of Invs. of Real Est. Partners, Inc.*
*v. Coldwell Banker Real Est. Corp.*,
281 F.R.D. 422 (C.D. Cal. 2012) ...................................................... 23

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020) ..................................................... 12

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .............................................................. 16

*Mezzadri v. Med. Depot, Inc.*,
2016 WL 5107163 (S.D. Cal. May 12, 2016) ................................. 12

*Moeller v. Taco Bell Corp.*,
220 F.R.D. 604 (N.D. Cal. 2004) ..................................................... 14

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ......................................................... 19

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ........................................................... 17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022), *cert. denied sub nom.*
*StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*,
143 S. Ct. 424 (2022) ...................................................................... 10

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. July 15, 2016) ................................. 17

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........................................................... 11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ......................................................... 22

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........................................................... 15

4890-0137-8692.v1

**Page**

*Rannis v. Recchia,*
   380 F. App'x 646 (9th Cir. 2010).........................................................................11

*Sali v. Corona Reg'l Med. Ctr.,*
   909 F.3d 996 (9th Cir. 2018).............................................................................14

*Sharpe v. Puritan's Pride, Inc.,*
   466 F. Supp. 3d 1066 (N.D. Cal. 2020) ...........................................................17

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund*
   *v. CVS Pharmacy, Inc.,*
   540 F. Supp. 3d 182 (D.R.I. 2021)..............................................................*passim*

*Soares v. Flowers Foods, Inc.,*
   320 F.R.D. 464 (N.D. Cal. 2017) ......................................................................24

*Spann v. J.C. Penney Corp.,*
   307 F.R.D. 508 (C.D. Cal. 2015) .................................................................19, 21

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by*
   *Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) .............................................................................................19

*Tait v. BSH Home Appliances Corp.,*
   289 F.R.D. 466 (C.D. Cal. 2012) ......................................................................21

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) ...........................................................................................17

*United States ex rel. Garbe v. Kmart Corp.,*
   73 F. Supp. 3d 1002 (S.D. Ill. 2014),
   *aff'd in part & rev'd in part,* 824 F.3d 632 (7th Cir. 2016) ..................................4

*United States ex rel. Garbe v. Kmart Corp.,*
   824 F.3d 632 (7th Cir. 2016)..........................................................................4, 20

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) .............................................................................24

4890-0137-8692.v1

Page

*Vasquez v. Superior Ct.*,
  4 Cal. 3d 800 (1971) ................................................................ 23, 24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................... 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................ 19

*Woodard v. Labrada*,
  2021 WL 4499184 (C.D. Cal. Aug. 31, 2021) ........................... 22, 23

*Zakaria v. Gerber Prods. Co.*,
  2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ............................... 22

**STATUTES, RULES AND REGULATIONS**

California Civil Code
  §1750, *et seq.* ............................................................................... 16

Federal Rules of Civil Procedure
  Rule 23 .............................................................................. 1, 10, 11
  Rule 23(a) ........................................................................ 2, 11, 15
  Rule 23(a)(1) ................................................................................. 11
  Rule 23(a)(2) ................................................................................. 11
  Rule 23(a)(3) ................................................................................. 12
  Rule 23(a)(4) ........................................................................... 13, 14
  Rule 23(b) ..................................................................................... 10
  Rule 23(b)(3) ......................................................................... *passim*
  Rule 23(b)(3)(A) ........................................................................... 24
  Rule 23(g) ....................................................................... 3, 14, 15
  Rule 23(g)(1) ................................................................................. 14
  Rule 23(g)(1)(A) ............................................................................ 14
  Rule 23(g)(1)(A)(i) .................................................................. 14, 15
  Rule 23(g)(1)(A)(ii) ................................................................. 14, 15
  Rule 23(g)(1)(A)(iii) ................................................................ 14, 15
  Rule 23(g)(1)(A)(iv) ................................................................ 14, 15

4890-0137-8692.v1

1

2                                                                                                    **Page**

3

45 C.F.R.
    §162.1102(a)(2) ................................................................................................. 4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4890-0137-8692.v1

Plaintiffs Bryon Stafford and Elizabeth Davis ("Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in Support of their Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

## I.   INTRODUCTION

A customer walking into a pharmacy to purchase a prescription drug is either an insured customer or a cash customer. Insured customers have insurance by which a third-party payer ("TPP") pays some or all of the cost to purchase a prescription drug. Customers who do not use insurance are cash customers.

It is a bedrock principle in the pharmaceutical industry that to purchase a given prescription drug, insured customers should pay no more than cash customers. If insured customers paid more than cash customers, they would receive no insurance "benefit" and, indeed, would be penalized for using insurance. To abide by this principle, the pharmaceutical industry relies on two interrelated concepts – (1) the "usual and customary" ("U&C") price, and (2) "lower-of" pricing.

The U&C price is universally known as the lowest price a pharmacy offers to a cash customer to purchase a prescription drug. Every time a pharmacy sells a prescription drug to an insured customer, the pharmacy is required to report its U&C price for that drug as part of the standardized claims adjudication process. This reporting of U&C prices ensures that insured customers pay the "lower of" the pharmacy's U&C price or the rate negotiated through insurance. The U&C price thus serves as a price ceiling and represents the highest amount an insured customer should pay for a prescription drug. Without lower-of pricing, insured customers would effectively be punished for using insurance.

For over a decade, Rite Aid engaged in a scheme to inflate U&C prices for insured customers like Plaintiffs. Because the U&C price is the most insured customers should pay, Rite Aid can manipulate its revenues by inflating U&C prices. That is precisely what Rite Aid did by creating the Rx Savings Program ("RSP"). Through the RSP, Rite Aid offered discount prices to cash customers on a specific

1  number of the most commonly prescribed generic drugs on its special RSP formulary.

2  However, Rite Aid uniformly failed to include its RSP prices when determining the

3  U&C price to report in conjunction with insured transactions for the prescription drugs

4  purchased by insured customers and also offered through the RSP (the "RSP Drugs").

5  Plaintiffs' claims are ideally suited for class treatment because they can be

6  established by reference to common, classwide evidence.  The central question to be

7  answered in this litigation is whether Rite Aid was required to include its RSP prices

8  when determining the U&C price to report for RSP Drugs.  Rite Aid admits that it did

9  not include its RSP prices when determining the U&C price to report for RSP Drugs.

10  Through common evidence, Plaintiffs will show that Rite Aid's RSP prices fell within

11  the long-recognized, industry-wide definition of the U&C price, and that Rite Aid's

12  unfair and deceptive practices damaged each Class member, causing them to overpay

13  for RSP Drugs and, thereby, unjustly enriching Rite Aid.

14  Courts from coast-to-coast have held that similar claims brought by insured

15  customers and TPPs challenging similar conduct were appropriate for class

16  certification.  *Corcoran v. CVS Health Corp.*, 779 F. App'x 431 (9th Cir. 2019); *Sheet*

17  *Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540

18  F. Supp. 3d 182 (D.R.I. 2021).[1]  The same result should issue here.  Accordingly,

19  Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class

20  certification.

21  **II.    THE PROPOSED CLASS**

22  Plaintiffs seek certification of the following class (the "Class") pursuant to

23  Federal Rules of Civil Procedure 23(a) and (b)(3):

24  > All persons in the state of California who, during the period January 1,
25  > 2008 through October 12, 2020, using prescription drug insurance
26  > provided by a third-party payer, paid, in full or in part, for a prescription
27  > drug available through Rite Aid's Rx Savings Program and the amount
28  > paid by the person was inflated because the Rx Savings Program price

---

[1]    All citations are omitted unless otherwise stated.

was not included when determining the usual and customary price to report.[2]

The proposed definition is clear and based on objective criteria. *Bloom v. City of San Diego*, 2021 WL 8053533, at *9 (S.D. Cal. June 8, 2021).

Plaintiffs ask that the Court also appoint Plaintiffs as Class representatives (the "Class Representatives") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel pursuant to Rule 23(g).

## III. STATEMENT OF COMMON, CLASSWIDE EVIDENCE

### A. The U&C Price Exists to Ensure that Insured Customers and Third-Party Payers Do Not Pay More to Receive Prescription Drugs than Cash Customers

This case involves Rite Aid's manipulation of the U&C price and the interplay between insured and cash prescription drug transactions. As Plaintiffs' expert Dr. Kenneth W. Schafermeyer, a Professor Emeritus of Pharmacy Administration at the University of Health Sciences and Pharmacy in St. Louis explains, the retail pharmaceutical industry has long acknowledged only two types of pharmaceutical transactions: (1) transactions involving insured customers; and (2) transactions involving cash customers. *See* Ex. 1 (Expert Report of Kenneth W. Schafermeyer, Ph.D.) ("Schafermeyer Rpt."), ¶¶26-32. Dr. Schafermeyer further explains that decades of industry practice establish that the U&C price consistently has been understood in the industry to mean the lowest price that a pharmacy would offer to a cash customer (*i.e.*, a customer paying without using insurance), including any discounts offered by the pharmacy to the cash customer for a specific drug product on a particular day at a particular pharmacy. *Id.*, ¶¶29, 33-48, 50-68. Thus U&C operates as a ceiling for prices charged to insured customers for prescription drugs.

---

[2]  Excluded from the Class are: (1) Defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp., their management, employees, subsidiaries, and affiliates; (2) The Court, judicial staff, and members of their immediate families; and (3) Beneficiaries of government-funded prescription drug insurance plans.

4890-0137-8692.v1

*Id.*, ¶¶27-30, 50-61.  As Dr. Schafermeyer explains: "Insurance plans are designed to reduce costs – not make health care more expensive." *Id.*, ¶27. "Allowing pharmacy customers without insurance to get routinely lower prices than those with insurance would defeat the cost-containment purpose of insurance." *Id.*

Approximately 90% of Americans are enrolled in health insurance plans that cover at least a portion of the costs of prescription drugs.[3]  When insured customers purchase RSP drugs at Rite Aid, Rite Aid submits the claims for adjudication to a pharmacy benefit manager ("PBM") using the industry-wide common data standards promulgated by the National Council for Prescription Drug Programs ("NCPDP"). *Id.*, ¶¶42-48, 92-94 (citing and explaining NCPDP standards).  The NCPDP standards apply to "all claims submissions to all health plans." *United States ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002, 1013-14 (S.D. Ill. 2014) (citing 45 C.F.R. §162.1102(a)(2)), *aff'd in part & rev'd in part*, 824 F.3d 632 (7th Cir. 2016).  To ensure that insured customers do not pay more than cash customers, Rite Aid is required to report the U&C price for a drug using the NCPDP's mandatory code 426-DQ. *See, e.g.*, Ex. 1 (Schafermeyer Rpt.), ¶¶46-47, 93-94.

Insured customers rely on and expect pharmacies to report accurate U&C prices because the U&C price is used to ensure that insured customers do not pay more than the price charged to cash-paying customers. Ex. 1 (Schafermeyer Rpt.), ¶¶45-47, 54-55; Ex. 2 (RiteAid00274917) at 5092 at 176:4-8 ("████████████████████ ███████████████████████████████████████████████████ ███████████"); *accord* Ex. 3 (excerpts from the Deposition of Bryon Stafford (Mar. 17, 2023)) ("Stafford Dep.") at 48:11-21 ("It would just seem fair that I would – if I can go in and pay a cheaper price if I'm paying cash, then that would make a lot more sense than paying a higher price and paying with insurance."); Ex. 4 (excerpts from

---

[3]   *See, e.g.*, Stephanie Marken, U.S. Uninsured Rate at 11%, Lowest in Eight-Year Trend,    http://www.gallup.com/poll/190484/uninsured-rate-lowest-eight-year-trend.aspx.

4890-0137-8692.v1

the Deposition of Elizabeth Davis (Aug. 31, 2023)) ("Davis Dep.") at 41:25-42:10 ("Q.  [P]lease tell me the basis for your statement that you were overcharged for drugs by my client, Rite Aid . . . .  A.  It is my understanding that  there was an Rx Saving Program for people that didn't have insurance, or cash paying customers could join and would pay less than the amount I paid.").

Nonetheless, Rite Aid ███████████████████████████████ ███████████████████████████ Ex. 5 (RiteAid00273634) at 3733 at 100:15-18) ("████████████████████████ ████████████████████████████").

**B.    Starting in 2006, Rite Aid Competitors' U&C Pricing Decisions Jeopardized a Significant Rite Aid Revenue Source**

The U&C price is material not only to Plaintiffs and Class members, but also to Rite Aid's bottom line because prescription drug sales to insured customers represent a significant source of Rite Aid's revenue.  *See, e.g.*, Ex. 6 (2015 Rite Aid Form 10-K) at 4 ("In fiscal 2015, prescription drug sales accounted for 68.8% of our total sales. We believe that pharmacy operations will continue to represent a significant part of our business . . . .").  Because the U&C price is the ceiling that insured customers pay, if Rite Aid reports a U&C price that is below the rate negotiated for insured customers, it effectively loses the difference.

In 2006, Walmart, Inc. ("Walmart") began charging cash customers $4 for a 30-day supply of some of the most commonly prescribed generic prescription drugs and began reporting its $4 price as Walmart's U&C price for transactions involving insured customers, threatening Rite Aid's prescription drug revenue. Ex. 1 (Schafermeyer Rpt.), ¶¶62-68.  Other Rite Aid competitors, like Target and Costco, quickly introduced similar programs to compete with Walmart's lower prices, and they too reported their lower prices as their U&C prices in transactions involving insured customers.  *Id.*

4890-0137-8692.v1

1        Rite Aid faced a choice.  It could reduce cash prices to compete with Walmart,

2  Target, and Costco, but only at the risk of losing revenue because more insured

3  transactions would adjudicate as at those lower cash prices.  If Rite Aid failed to

4  reduce its cash prices, it risked losing lucrative cash customers.  Rite Aid's solution

5  was simple:  have the best of both worlds – charging cash customers RSP Prices while

6  excluding such prices from its determination of the U&C to protect its lucrative and

7  higher prices to insured customers.

8        Starting in 2008, Rite Aid launched the RSP as a no-fee discount program open

9  to all members of the general public that allowed cash paying customers to purchase

10  thousands of brand name and generic prescription drugs at a discount–the RSP Prices.

11  *See* Ex. 7 (*Humana Health Plan, Inc. v. Rite Aid Hdqtrs.*, AAA No. 01-19-0000-4057,

12  slip op. (Apr. 22, 2022)) at 6; Plaintiffs' Fourth Amended Class Action Complaint for:

13  (1) Violations of the California Unfair Competition Law; (2) Violations of the

14  California Consumer Legal Remedies Act; (3) Unjust Enrichment; and (4) Negligent

15  Misrepresentation (ECF 304) ("FAC"), ¶¶11-12, 41-44; Ex. 8 (excerpts from the

16  30(b)(6) Deposition of Alison Farrell (July 16, 2020)) ("Farrell Dep.") at 126:5-21;

17  Ex. 9 (excerpts from the 30(b)(1) Deposition of Amy Harvey (July 8, 2020)) ("Harvey

18  Dep.") at 22:23-25; 146:16-147:23; Ex. 8 (Farrell Dep.) at 39:6-18. ███████

19  ████████████████████████████████████ Ex. 10 (Farrell Dep.

20  Ex. 33 RiteAid00231803) at 1805. ███████████████████████

21  ███████████████████████████████████████████████

22  ███████████████████████████████████████████████

23  ███████████████████████████████████████████████

24  ██████████████████████. Ex. 10 (Farrell Dep. Ex. 33

25  RiteAid00231803). ████████████████████████████

26  ████████████████████████████████████████████."[4]

27  ────────────────

28  [4] ████████████████████████████████████████

1  Ex. 11 (RiteAid00276293) at 6293.  As set forth herein and in Dr. Schafermeyer's

2  report, while Rite Aid knew that its RSP Prices represented its cash prices, it failed to

3  report or otherwise consider its RSP Prices when determining the U&C prices to

4  report when insured customers purchased RSP Drugs.

5     There is no question that Rite Aid's RSP Prices will be found to be its cash

6  prices, requiring Rite Aid to have included such discounted prices when reporting its

7  U&C prices.  As the Humana arbitrator explicitly found:

8     I find that Rite Aid's interpretation of U&C as the "usual and customary
   *retail* price" or "the shelf or list price paid by a customer who pays

9     without any sort of benefit program, whether insurance or a membership
   program" is inaccurate, unsupported by the record, and does not provide

10     a justifiable defense for excluding RSP prices from U&C. . . . I find that
   ***Rite Aid's exclusion of RSP data from its U&C price indisputably***

11     ***compromised the accuracy of U&C.***

12  Ex. 7 (*Humana*, slip op.) at 29-30.

13     **C.**  **Rite Aid Was Required to Include Its RSP Prices When
   Determining the U&C Price for RSP Drugs Because Rite**

14        **Aid Offered RSP Prices to Cash Customers**

15     Common, classwide evidence establishes that Rite Aid should have included its

16  RSP prices when determining the U&C price to report for RSP drugs. ▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 13 (RiteAid00232296) at 2296 ("▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮");

19  Ex. 10  (Farrell Dep. Ex. 33 RiteAid00231803); Ex. 14 (excerpts from the Deposition

20  of William Wolfe (June 15, 2023)) ("Wolfe Dep.") at 39:10-13 ("▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮rbitration proceedings and based on a

26  complete evidentiary record, in his Opinion and Final Award in litigation brought by
   Humana against Rite Aid on the inflated U&C issue, the arbitrator stated: "[T]he

27  evidence demonstrates that Rite Aid sought to conceal this information [that it did not
   report RSP prices as U&C] from Humana with the intent to realize higher profits."

28  Ex. 7 (*Humana*, slip op.) at 25.



1  ▮▮▮”).  Because the RSP is not insurance, RSP prices represent cash prices that Rite

2  Aid was required to include when determining the U&C price to report for RSP drugs.

3  *See, e.g.*, Ex. 1 (Schafermeyer Rpt.), ¶¶26-32, 36, 62.

4

5

6  Ex. 10 (Farrell Dep. Ex. 33 RiteAid00231803)

7  1806; Ex. 13 (RiteAid00232296) at 2296.

8

9  Ex. 5 (RiteAid00273634) at 3656-57 and

10  3690 (23:21-24:3, 24:4-13 and 57:12-18).

11  Ex.

12  11 (RiteAid00276293); *see also* Ex. 15 (RiteAid00273199) at 3290 (92:17-21) ("

13

14

15  ").

16  *See*

17  Ex. 8 (Farrell Dep.) at 164:15-165:8; Ex. 1 (Schafermeyer Rpt.), ¶134 ("[T]here were

18  no restrictions on who could enroll.").

19

20  Ex. 5 (RiteAid00273634) at 3656-57 (23:14-24:1).

21

22

23

24  Ex. 15 (RiteAid00273199) at 3332 (134:16-25).

25      **D.**    **Rite Aid Knew It Should Include the RSP Price When Determining the U&C Price to Report for RSP Drugs**

26

27

28

4890-0137-8692.v1



*See* Ex. 16 (Farrell Dep. Ex. 32 RiteAid00231297) at 1298 (Intra-company Memo from M. de Bruin to R. Easley (Dec. 12, 2007)); *see also* Ex. 10 (Farrell Dep. Ex. 33 RiteAid00231803) at 1805 (Intra-company Memo from M. de Bruin to R. Easley (Jan. 8, 2008)) ("

").  And that is exactly what happened.

Ex. 17 (Declaration of Amy M. Harvey, August 9, 2023 & App'x 1); *see also, e.g.*, Ex. 18 (Farrell Dep. Ex. 47 NONPARTY_NACDS_021611) at NONPARTY_NACDS_021612 (Email from G. Schuyler to M. Staples (Sept. 27, 2011)) ("

"); Ex. 19 (Farrell Dep. Ex. 35  RiteAid00238972) (Email from D. Miller to R. Thompson (May 3, 2010)) (   ).  These were hardly outliers.

Ex. 20 (Harvey Dep. Ex. 28 RiteAid00224835) (Email from A. Harvey to B. Murphy (Nov. 2015)).

*Id.* at 4838.

4890-0137-8692.v1

1    ███████████████████████████████████████████████████

2    ███████████████████████████████████████████████████

3    ███████████████████████████████████████████████████

4    *Id.* at 4835.

5    ███████████████████████████████████████████████████

6    ████████████████████████████████████████████ *See*

7    Ex. 21 (Harvey Dep. Ex. 15 RiteAid00266345) at 6345 (Email from R. Stoneking

8    (May 12, 2009)) (quoting ███████████████████████████).

9       As recently recognized by the Humana arbitrator, and as the evidence in this

10    action will show, "Rite Aid never intended to disclose that it was not reporting RSP

11    prices as U&C" prices. Ex. 7 (*Humana*, slip op.) at 27. Much like Humana did in the

12    arbitration, Plaintiffs here will be able to show that "Rite Aid's exclusion of RSP data

13    from its U&C price indisputably compromised the accuracy of U&C." *Id.* at 30.

14       The longstanding industry understanding of the U&C price remains unchanged.

15    Yet, Rite Aid failed to include its RSP prices when determining the U&C price to

16    report for RSP drugs. Insured customers continue to be damaged by paying more to

17    receive RSP drugs than cash-paying members of the general public. Plaintiffs

18    accordingly seek certification of their claims for relief.

19    **IV.   LEGAL STANDARD**

20       The requirements of Rule 23 are well known: numerosity, commonality,

21    typicality, and adequacy, and satisfaction of the requirements for one of the class

22    types defined in Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80

23    (9th Cir. 2011). While the Court conducts a "'rigorous analysis,'" *Wal-Mart Stores,*

24    *Inc. v. Dukes*, 564 U.S. 338, 351 (2011), Plaintiffs need only show that Rule 23's

25    requirements are met "by a preponderance of the evidence." *Olean Wholesale*

26    *Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022),

27    *cert. denied sub nom. StartKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S.

28    Ct. 424 (2022). Merits questions may only be considered to the extent they are

"relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## V.   THE PROPOSED CLASS SATISFIES RULE 23(a)'s PREREQUISITES

Rule 23(a) enumerates four requirements for class certification: "'numerosity, commonality, typicality, and adequate representation.'" *Garcia v. Wal-Mart Assocs., Inc.*, 2019 WL 4605714, at *2 (S.D. Cal. Aug. 26, 2019).   Plaintiffs satisfy each requirement.

### A.   The Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable.   Fed. R. Civ. P. 23(a)(1).   Numerosity is typically satisfied where there are more than 40 class members.   *Ali v. Franklin Wireless Corp.*, 2023 WL 25718, at *2 (S.D. Cal. Jan. 3, 2023); *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).   Here, numerosity is satisfied because Plaintiffs' expert analysis of Rite Aid's transactional claims data has identified overcharges affecting significantly more than forty Class members in California.   Ex. 22 (Expert Report of Nicole Maestas, Ph.D.) ("Maestas Rep."), ¶¶33, 36 (finding in excess of 1.7 million affected insured consumers).   As the court in *Sheet Metal* recognized, a class that includes "hundreds if not thousands of [members] – is too numerous to render joinder practical."   540 F. Supp. 3d at 198.   Accordingly, the numerosity requirement is satisfied.

### B.   Questions of Fact and Law Are Common to the Proposed Class

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   Common questions need not address every aspect of the plaintiffs' claims, but they must "generate common *answers* apt to drive the resolution of the litigation."   *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).   A single common question is sufficient.   *See Ellis*, 657

4890-0137-8692.v1

F.3d at 981; *see also Ali*, 2023 WL 25718, at \*3 ("The plaintiff's burden for showing commonality is 'minimal.'").

The common question that will drive the resolution of this litigation is whether Rite Aid should have included its RSP prices when determining the U&C price to report for RSP Drugs.  *See* FAC, ¶73 (identifying additional common questions).  As set forth in the expert report of Dr. Kenneth Schafermeyer, and as demonstrated by the evidence, Rite Aid's RSP prices fit within the accepted industry meaning and Rite Aid's own understanding of U&C prices.  *See* §III.A.-D., *infra*.  Rite Aid disagrees.  Either Plaintiffs are right, or Rite Aid is right.

As courts in this Circuit have repeatedly recognized, the question of whether statements are false or misleading is a common contention that is capable of classwide resolution because the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  *See Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at \*4 (S.D. Cal. May 12, 2016) ("[T]he question of whether Defendant's statements are false or misleading 'is central to the validity of each one of [Plaintiff's] claims,' the answer to which will 'drive the resolution of the litigation.'"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562-63 (N.D. Cal. 2020) (finding commonality satisfied because the question of whether defendant's statements were material and misleading is a "common legal question[] subject to common proof").  As explained above, Plaintiffs will prove their claims with common, classwide evidence.  *See supra* §III.  Accordingly, the commonality requirement is satisfied.

## C.    The Proposed Class Representatives' Claims are Typical of the Proposed Class's Claims

Rule 23(a)(3)'s typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(3)'s typicality standard is permissive.  "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class members."

1   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[T]hey need not be

2   substantially identical."  *Id.*

3       As discussed herein, Rite Aid admits that the RSP is offered to all members of

4   the public and that it uniformly fails to include RSP prices when determining the

5   U&C.Thus, the proposed Class Representatives' claims are typical of the claims of

6   proposed Class members because the claims all arise from Rite Aid's uniform course

7   of conduct – Rite Aid's failure to include its RSP prices when determining the U&C

8   price to report for RSP Drugs.  *See Corcoran*, 779 F. App'x at 434 (finding typicality

9   satisfied because, like here, the defendant's "actual reporting to the PBMs underscores

10  the fact that the class representatives' claims are 'reasonably coextensive,' if not

11  'substantially identical' to the claims of the absent class members"); *Sheet Metal*, 540

12  F. Supp. 3d at 199-202.   The same is true here.   Accordingly, the typicality

13  requirement is satisfied.

    **D.**    **The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members**

14
15      Rule 23(a)(4) requires the representatives to "fairly and adequately protect the

16  interests of the class."   Fed. R. Civ. P. 23(a)(4).   Adequacy involves a two-part

17  inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest

18  with other class members and (2) will the named plaintiffs and their counsel prosecute

19  the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  Both the

20  proposed Class Representatives and Class Counsel are adequate.

21      **1.**    **The Proposed Class Representatives Are Adequate**

22      To assess the adequacy of proposed class representatives, Rule 23(a)(4) requires

23  consideration of whether the plaintiff has interests antagonistic to those of the

24  purported class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626

25  n.20 (1997).  "'The threshold of knowledge required to qualify a class representative

26  is low; a party must be familiar with the basic elements of her claim[], and will be

27  deemed inadequate only if she is 'startlingly unfamiliar' with the case.'"  *Astiana v.*

28

4890-0137-8692.v1

*Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) (quoting *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)).

Here, the proposed Class Representatives have demonstrated their adequacy. Each has participated in this litigation by reviewing the pleadings filed in the action, participating in discovery by collecting documents, reviewing and verifying interrogatory responses, and preparing for and having their depositions taken. Shingler Decl., ¶2. Each understands their role as a Class Representative and has committed to prosecuting this action on behalf of the Class they seek to represent. *See, e.g.*, Ex. 4 (Davis Dep.) at 16:13-17:9; Ex. 3 (Stafford Dep.) at 17:6-12, 17:17-18:16, 21:9-21, 57:3-19. Further, because each proposed Class Representative asserts the same claims that would be asserted by Class members, there is no risk of antagonistic or conflicting claims. *Astiana*, 291 F.R.D. at 503. Thus, the proposed Class Representatives are adequate.

### 2. Plaintiffs' Counsel Are Adequate and Should Be Appointed as Class Counsel

Plaintiffs have selected qualified counsel, Robbins Geller and Scott+Scott, which have significant consumer class action litigation experience and have competently represented the Class. Ex. 23 (Robbins Geller Rudman & Dowd LLP Firm Resume); Ex. 24 (Scott +Scott Firm Resume). In assessing counsel's adequacy, the Court considers counsel's qualifications, experience, and general capability to conduct the litigation. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Plaintiffs' counsel are adequate under Rule 23(g)(1)(A), and thus, the requirements of Rule 23(a)(4) are satisfied.

Plaintiffs also move the Court to appoint Robbins Geller and Scott+Scott as Class Counsel pursuant to Rule 23(g). "[A] court that certifies a class must appoint class counsel" and must consider the Rule 23(g)(1)(A) factors. Fed. R. Civ. P. 23(g)(1). The Court has already acknowledged that Class Counsel satisfy the requirements of Rule 23(g)(1)(A)(i-iv) by appointing them as Interim Class Counsel.

4890-0137-8692.v1

ECF 196.  In seeking appointment, Class Counsel promised that their "commitment [to this action] will continue." ECF 105 at 8.  Class Counsel have kept their promise, zealously pursuing the claims of Plaintiffs and the Class as a review of the docket and the more than a dozen Joint Status Reports the parties have filed will confirm.  Discovery in this case has been hard-fought.  Rite Aid produced, and Plaintiffs reviewed, more than 221,490 documents spanning in excess of 250,000 pages.  Shingler Decl., ¶4.  Plaintiffs deposed no less than two of Rite Aid's Rule 30(b)(6) designees, deposed at least five current and/or former Rite Aid employees, defended each of the named Plaintiffs' depositions, and subpoenaed documents from seven pharmacy benefit managers ("PBMs"), engaged in lengthy, hard-fought discovery meet and confers with each PBM, and deposed certain PBMs.  *Id.*  Plaintiffs responded to at least 41 interrogatories and served at least 16 interrogatories on Rite Aid.  *Id.*, ¶5.  Plaintiffs also served at least 13 requests for admission on Rite Aid.  *Id.*  Plaintiffs responded to at least 14 requests for production on Rite Aid and served at least 46 requests for production of their own.  *Id.*  Class Counsel further reaffirm that they are "committed to expending whatever resources are necessary to achieve a favorable result for the Class."  ECF 105 at 12.  Thus, Rule 23(g)(1)(A)(i) and (iv) remain satisfied.  Rules 23(g)(1)(A)(ii) & (iii) are similarly satisfied because Class Counsel remain highly qualified, having led many complex class actions involving the pharmaceutical industry and challenges to U&C pricing.  Exs. 23 & 24 (Firm Resumes).  Accordingly, Class Counsel are adequate and also should be appointed under Rule 23(g).

## VI.   A MECHANISTIC METHODOLOGY THAT IS CONSISTENT WITH PLAINTIFFS' THEORY OF LIABILITY EXISTS TO CALCULATE CLASSWIDE DAMAGES

Following the Rule 23(a) analysis, courts analyze whether the plaintiffs' "'damages are susceptible of measurement across the entire class.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)); *see also Astiana*, 291 F.R.D. at 506 ("'At

class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.'").[5]   To satisfy *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva*, 716 F.3d at 514.

As set forth in her expert report, Plaintiffs' economic expert, Dr. Nicole Maestas, Ph.D., concludes that damages can be calculated on a classwide, formulaic basis that will not require individualized inquiries regarding members of the Class.

Plaintiffs' theory of liability for their California Consumer Legal Remedies Act ("CLRA")[6] and negligent misrepresentation claims is that Plaintiffs and the Class members were overcharged as a result of Rite Aid's deceptive or misleading price scheme to artificially inflate the U&C prices reported and used to charge Plaintiffs and members of the Class for RSP Drugs.   FAC, ¶1.   Consistent with this theory of liability, Dr. Maestas has developed a model that is capable of identifying and calculating the Class's overcharges as the difference between the amount a Plaintiff or Class member actually paid for RSP Drugs and the price they would have paid had Rite Aid included the RSP price when determining the U&C price for that same drug. *See generally* Ex. 22 (Maestas Rep.).   Dr. Maestas's proposed methodology is thus capable of generating classwide damages calculations that are consistent with Plaintiffs' legal theories by reference to common, classwide data that does not require individualized analysis.   Plaintiffs have thus established both that *Comcast* is satisfied, and that damages are susceptible to measurement across the Class.   *See, e.g.*, *Elkies v.*

---

[5]   While courts typically consider whether a damages model satisfies *Comcast* as part of the predominance analysis, a damages model is not a requirement for certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (*Comcast* "did not hold . . . that a plaintiff seeking class certification must present an expert damages model.").

[6]   Cal. Civ. Code §§1750, *et seq.*

4890-0137-8692.v1

*Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, at \*9 (C.D. Cal. Oct. 18, 2018) ("'Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.""); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019); *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) ("No specific damages measure is prescribed in the CLRA, and the door is open to any reasonable measure."). Additionally, Plaintiffs' request for punitive damages under their CLRA claim is appropriately determined on a classwide basis. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at \*16 (N.D. Cal. July 15, 2016) ("'Because the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, any claim for such damages hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole.'").

## VII. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

Rule 23(b)(3) requires consideration of both predominance and superiority. As discussed below, both factors are satisfied.

### A. Common Questions Predominate over the Class's CLRA and Negligent Misrepresentation Claims

The predominance inquiry considers whether "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Ninth Circuit has held that "'there is clear justification for handling the dispute on a representative rather than individual basis'" if "'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Hanlon*, 150 F.3d at 1022. A question is common where "'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original). To determine whether common evidence can supply classwide answers, the

1  predominance inquiry "begins . . . with the elements of the underlying cause of
2  action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

3       Plaintiffs seek certification on behalf of the Class of their CLRA and negligent
4  misrepresentation claims arising under the law of California.  Common questions of
5  law and fact predominate over Plaintiffs' and the Class's CLRA and negligent
6  misrepresentation claims.  Both claims arise from the common, classwide contention
7  that Rite Aid should have reported or otherwise included its RSP prices when
8  determining the U&C price to report for RSP Drugs.  As set forth below, Plaintiffs
9  will marshal common, classwide evidence to satisfy the elements of their claims.
10 Indeed, courts considering challenges to other pharmacies' U&C reporting practices
11 readily determined that common questions predominated over individualized ones.
12 *See, e.g.*, *Sheet Metal*, 540 F. Supp. 3d at 206 ("[T]he common issues to be tested by
13 the proposed classes – namely, whether CVS fraudulently failed to include its HSP
14 prices in its U&C pricing – will provide common answers.") (certifying claims under
15 California, Connecticut, Illinois, New Mexico, New York, and Ohio consumer
16 protection statutes, among others).  The same will be true here.  Thus, the elements of
17 Plaintiffs' CLRA and negligent misrepresentation claims are readily susceptible to
18 certification because they raise objective questions common to the Class that can be
19 readily answered by reference to common evidence, satisfying Rule 23(b)(3)'s
20 predominance requirement.

21       **1.    Common Evidence Will Be Used to Prove Plaintiffs'**
              **CLRA Claims**

22       "Courts routinely hold that if a plaintiff shows by a preponderance of the
23 evidence that the questions of materiality and likelihood of deception can be resolved
24 with common evidence based on the objective reasonable consumer standard, then
25 common questions predominate over individual ones with respect to claims under
26 the . . . CLRA . . . ." *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 407 (N.D. Cal. 2021);
27 *see also Alger v. FCA US LLC*, 334 F.R.D. 415, 425 (E.D. Cal. 2020) ("Courts

regularly find predominance satisfied and certify . . . CLRA class claims."); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015) (recognizing "California courts often find predominance satisfied in CLRA cases").  To bring a CLRA claim, the plaintiff must show that: (1) the defendant's conduct was deceptive; and (2) that the deception caused plaintiff to be harmed.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  Additionally, "California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007).

**Deception**.  Plaintiffs will use common evidence to establish deception.  Under the CLRA, whether a practice is "deceptive" is determined by reference to whether the practice is likely to deceive the reasonable consumer.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.").  As courts within the Ninth Circuit have repeatedly held, "materiality and likelihood of deception are the essential or central elements of a claim under the CLRA . . . and when these elements can be resolved with common proof, they predominate over any remaining issues, even those that must be resolved on an individual basis." *Bailey*, 338 F.R.D. at 407; *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (same); *Brickman v. Fitbit, Inc.*, 2017 WL 5569827, at *6 (N.D. Cal. Nov. 20, 2017) ("[T]he CLRA claim is particularly suited to class treatment because it applies an objective, reasonable consumer standard to determine whether a statement was deceptive.").

Plaintiffs will marshal common evidence to establish that Rite Aid's failure to include its RSP prices when determining the U&C price to report for RSP Drugs was likely to deceive because the reasonable insured customer would not expect to pay

4890-0137-8692.v1

1    more for RSP Drugs than cash customers.  Plaintiffs will use common, classwide

2    evidence to establish that the RSP price fits within the long-recognized, industry-wide

3    definition of the U&C price.  *See generally* Ex. 1 (Schafermeyer Rpt.).  In his expert

4    report, Dr. Schafermeyer explains that the long-recognized, industry-wide definition

5    of the U&C price is the lowest price that a pharmacy offers to a cash customer,

6    including any discounts offered by the pharmacy to the cash customer for a specific

7    drug product on a particular day at a particular pharmacy.  *Id.*  Dr. Schafermeyer

8    explains how this industry understanding is demonstrated through several different

9    sources, including, *e.g.*, the NCPDP standards, standards promulgated by federal and

10   state governments, and the longstanding industry conduct, and even Rite Aid's own

11   pharmacy manual.[7]  Dr. Schafermeyer's expert opinion, that Rite Aid should have

12   included its RSP prices when determining the U&C price to report, Ex.

13   1 (Schafermeyer Rpt.), ¶24, is common to the class.

14        Common, classwide evidence will further establish that Rite Aid's conduct

15   toward the Class is uniform in that Rite Aid never included its RSP prices when

16   determining the U&C price to report for RSP Drugs, and that on a uniform, classwide

17   basis, Rite Aid reported only its "retail" prices as its U&C price.

18   Ex. 5 (RiteAid00273634) at 3733 at 100:15-18; Ex. 1 (Schafermeyer Rep.), ¶¶85-87.

19   Rite Aid's actions toward the Class were also uniform because Rite Aid uniformly did

20   not take into consideration RSP prices in determining U&C prices.

21        Common, classwide evidence in the form of transactional claims data will

22   confirm that Rite Aid failed to include its RSP prices when determining the U&C

23   

---

24   [7]   *Id.*  Dr. Schafermeyer's position is fully consistent with Seventh Circuit authority. "Unless state regulations provide otherwise, the 'usual and customary' price is defined

25   as the 'cash price offered to the general public.'" *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 643-45 (7th Cir. 2016) ("The 'usual and customary' price

26   requirement should not be frustrated by so flimsy a device as Kmart's 'discount programs.'  Because Kmart offered the terms of its 'discount programs' to the general

27   public and made them the lowest prices for which its drugs were widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and

28   customary' charges for the drugs.").

1    price to report for RSP Drugs and will identify the prices that Rite Aid deceptively

2    reported as its U&C prices.  *See generally* Ex. 22 (Maestas Rep.).

3          Thus, through common, classwide evidence, Plaintiffs will demonstrate that

4    Rite Aid made a deceptive statement every time it failed to include its RSP prices

5    when determining the U&C price to report for its RSP Drugs.  Because deception is an

6    "essential or central element[]" of Plaintiffs' CLRA claims and "can be resolved with

7    common proof," *Bailey*, 338 F.R.D. at 407, whether Rite Aid's reporting of U&C

8    prices was deceptive is a common question that predominates as to the Class.

9          **Reliance and Causation**.  Plaintiffs will use common evidence to establish

10   reliance and causation.  For CLRA claims, causation and reliance may be established

11   on a classwide basis by materiality.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th

12   116, 129 (Cal. Ct. App. 2009) ("Causation, on a class-wide basis, may be established

13   by ***materiality***.  If the trial court finds that material misrepresentations have been made

14   to the entire class, an inference of reliance arises as to the class."); *Spann*, 307 F.R.D.

15   at 522 (same); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453 (S.D. Cal. 2014)

16   ("[I]f a material misrepresentation is made to the entire class, then the Court infers a

17   presumption of reliance as to the class, and individualized causation need not be

18   shown.").  "'Because materiality is judged according to an objective standard' – that

19   of the reasonable consumer – it may generally be established by common proof."

20   *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 459 (C.D. Cal. 2022).  This makes

21   CLRA claims "ideal for class certification because they will not require the court to

22   investigate 'class members' individual interaction with the product.'" *Tait v. BSH*

23   *Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

24         In terms of materiality, "price advertisements matter." *Hinojos v. Kohl's Corp.*,

25   718 F.3d 1098, 1107 (9th Cir. 2013).  They are at the core of materiality – and it is the

26   price that Plaintiffs contend is false and deceptive here.  As discussed above, Rite

27   Aid's conduct towards the Class was uniform in that Rite Aid uniformly failed to

28   include its RSP prices when determining the U&C price to report for RSP Drugs.

Indeed, the Supreme Court has recognized that when judged by such objective standards, materiality is a common question because a "failure of proof on the issue of materiality would end the case." *Amgen*, 568 U.S. at 460; *see also Bailey*, 338 F.R.D. at 407; *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (identifying as a common, predominate issue "whether the facts that [defendant] allegedly failed to disclose were material").

Thus, individualized questions will not predominate as to deception, reliance, or causation, and predominance is satisfied as to Plaintiffs' CLRA claims.

### 2. Common Evidence Will Be Used to Prove Plaintiffs' Negligent Misrepresentation Claims

Negligent misrepresentation requires: (1) a misrepresentation, (2) knowledge of falsity, (3) justifiable reliance, and (4) resulting damages. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008). For reasons substantially similar to those discussed in relation to Plaintiffs' CLRA claim, the negligent misrepresentation elements of falsity, scienter, and reliance are capable of proof through common, classwide evidence. *See Brickman*, 2017 WL 5569827, at *6-*7 (holding materiality and reliance standards apply equally to CLRA and negligent misrepresentation claims); *Woodard v. Labrada*, 2021 WL 4499184, at *37 (C.D. Cal. Aug. 31, 2021) (same).

**Falsity and Scienter**. Plaintiffs will use common evidence to prove falsity and scienter. Negligent misrepresentation claims are "good candidates for class treatment in that they focus in significant part on the falsity of the defendant's statements, and the defendant's knowledge of falsity or assertion of a falsehood without reasonable grounds." *Brickman*, 2017 WL 5569827, at *6; *see also Zakaria v. Gerber Prods. Co.*, 2016 WL 6662723, at *13 (C.D. Cal. Mar. 23, 2016) (because first element of negligent misrepresentation claims refers "only to Defendant's conduct, they are susceptible to common proof.").

As discussed in detail above, *see supra* §VI.A.2, Plaintiffs will use common, classwide evidence to establish that the RSP price fits within the long-recognized, industry-wide definition of the U&C price. Additionally, Plaintiffs will use common, classwide evidence to prove that Rite Aid uniformly failed to include its RSP prices when determining the U&C price to report for RSP Drugs. Plaintiffs will also use common, classwide evidence to show that Rite Aid lacked any reasonable grounds to believe that its misrepresentations were true, given that the prices it reported were substantially (and unjustifiably) higher than the prices it charged under its RSP to cash-paying customers. Because falsity and scienter are essential elements of Plaintiffs' negligent misrepresentation claims that are capable of resolution through common proof, whether Rite Aid's representations of U&C prices were false and made without reasonable grounds to believe their truth are common questions that predominate as to the Class. *See, e.g.*, *Brazil v. Dell Inc.*, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) ("Whether these representations were false is susceptible to common proof in the form of Dell's pricing histories, as well as through testimony from Dell's employees about the pricing policies.").

**Reliance**. Plaintiffs will use common evidence to prove reliance. "Like claims under the CLRA, . . . negligent misrepresentation claims benefit from a presumption of classwide reliance under California law." *Woodard*, 2021 WL 4499184, at *37. Indeed, "reliance may be inferred" for negligent misrepresentation claims "when the facts show that material misrepresentations were made to the entire class." *Brickman*, 2017 WL 5569827, at *7; *see also Collins v. Rocha*, 7 Cal. 3d 232, 237 (1972). Likewise, "[t]he requirement that reliance must be justified in order to support recovery may also be shown on a class basis." *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 n.9 (1971). "To establish justifiable reliance on the alleged fraudulent scheme, Plaintiffs need only show that the alleged misrepresentations were a 'substantial factor' in inducing reliance." *Joint Equity Comm. of Invs. of Real Est. Partners, Inc. v. Coldwell Banker Real Est. Corp.*, 281 F.R.D. 422, 433 (C.D. Cal. 2012). An

1  inference of justifiable reliance arises if, "a reasonable man would have relied upon
2  the alleged misrepresentations." *Vasquez*, 4 Cal. 3d at 814 n.9.

3      As discussed above, *see supra* §VI.A.2, Rite Aid uniformly failed to include its
4  RSP prices when determining the U&C price to report for RSP Drugs.  Moreover,
5  common evidence will demonstrate that a reasonable consumer would consider Rite
6  Aid's misrepresentations of the U&C price of RSP Drugs material because they go to
7  an essential element of the bargain – *i.e.*, price.  Thus, the same common proof used to
8  prove reliance for Plaintiffs' CLRA claims will be used to prove reliance for
9  Plaintiff's negligent misrepresentation claims.

10     Thus, individualized questions will not predominate as to falsity, scienter, or
11  reliance, and predominance is satisfied as to Plaintiffs' negligent misrepresentation
12  claims.

13  **B.    A Class Action Is a Superior Method of Adjudicating This Dispute**

14     Rule 23(b)(3) requires Plaintiffs to demonstrate that a "class action is superior
15  to other available methods for fairly and efficiently adjudicating the controversy."
16  Fed. R. Civ. P. 23(b)(3).  "Where classwide litigation of common issues will reduce
17  litigation costs and promote greater efficiency, a class action may be superior to other
18  methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th
19  Cir. 1996).  Superiority is readily demonstrated here because any Class member's
20  individual recovery would be dwarfed by the cost of proving the predominating issues
21  in this complex case. *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 485 (N.D. Cal.
22  2017) (Rule 23(b)(3)(A) "only weighs against class certification where individual
23  damages 'run high' such that individual class members have a strong interest 'in
24  making individual decisions on whether and when to settle.'").  Further, in light of the
25  successful class action trial of similar claims in *Corcoran v. CVS Health Corp.*,
26  No. 3:15-cv-03504 (N.D. Cal. 2015), and the certification of similar claims in *Sheet*

27
28

4890-0137-8692.v1

1 | *Metal*, 540 F. Supp. 3d at 198-99, the manageability of proceeding on a classwide
2 | basis has already been confirmed.

3 | **VIII. CONCLUSION**

4 | For the foregoing reasons, Plaintiffs respectfully request that the Court grant
5 | their motion and certify the Class, appoint Plaintiffs as Class Representatives, and
6 | appoint Robbins Geller and Scott+Scott as Class Counsel.

7 | DATED:  October 6, 2023                    Respectfully submitted,

8 |                                           ROBBINS GELLER RUDMAN
  |                                             & DOWD LLP
9 |                                           DAVID W. MITCHELL
  |                                           ROBERT R. HENSSLER JR.
10|                                           ARTHUR L. SHINGLER III

11|

12|                                                  s/ David W. Mitchell
  |                                           DAVID W. MITCHELL

13|
14|                                           655 West Broadway, Suite 1900
  |                                           San Diego, CA  92101
15|                                           Telephone:  619/231-1058
  |                                           619/231-7423 (fax)

16|                                           ROBBINS GELLER RUDMAN
  |                                             & DOWD LLP
17|                                           STUART A. DAVIDSON (*pro hac vice*)
  |                                           MARK J. DEARMAN (*pro hac vice*)
18|                                           BRADLEY M. BEALL (*pro hac vice*)
  |                                           225 NE Mizner Boulevard, Suite 720
19|                                           Boca Raton, FL  33432
  |                                           Telephone:  561/750-3000
20|                                           561/750-3364 (fax)

21|                                           ROBBINS LLP
  |                                           GEORGE C. AGUILAR
22|                                           GREGORY E. DEL GAIZO
  |                                           5060 Shoreham Place, Suite 300
23|                                           San Diego, CA  92122
  |                                           Telephone:  619/525-3990
24|                                           619/525-3991 (fax)

25|                                           HOFFMAN & FORDE
  |                                           SCHUYLER V.V. HOFFMAN
26|                                           3033 Fifth Avenue, Suite 400
  |                                           San Diego, CA  92103
27|                                           Telephone:  619/546-7880
  |                                           619/546-7881 (fax)

28|

4890-0137-8692.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Plaintiff Bryon Stafford

SCOTT+SCOTT ATTORNEYS
  AT LAW LLP
JOSEPH P. GUGLIELMO (*pro hac vice*)
ERIN GREEN COMITE (*pro hac vice*)
CAREY ALEXANDER (*pro hac vice*)
AMANDA M. ROLON (*pro hac vice*)
ETHAN BINDER (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  212/233-6444
212/233-6334 (fax)

SCOTT+SCOTT ATTORNEYS
  AT LAW LLP
HAL D. CUNNINGHAM
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619/233-4565
619/233-0508 (fax)

LAW OFFICE OF ALFRED G.
  YATES, JR., P.C.
ALFRED G. YATES, JR.
1575 McFarland Road, Suite 305
Pittsburgh, PA 15216
Telephone:  412/391-5164
412/471-1033 (fax)

Attorneys for Plaintiff Elizabeth Davis

3:17-cv-01340-TWR-AHG

4890-0137-8692.v1

1

## CERTIFICATE OF SERVICE

2          I hereby certify under penalty of perjury that on October 6, 2023, I authorized

3    the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF

4    system which will send notification of such filing to the email addresses on the

5    attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of

6    the foregoing via the United States Postal Service to the non-CM/ECF participants

7    indicated on the attached Manual Notice List.

8                                              s/ David W. Mitchell
                                           DAVID W. MITCHELL
9
                                           ROBBINS GELLER RUDMAN
10                                            & DOWD LLP
                                           655 West Broadway, Suite 1900
11                                         San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
12                                         619/231-7423 (fax)

13                                         Email:  davidm@rgrdlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:17-cv-01340-TWR-AHG

# Mailing Information for a Case 3:17-cv-01340-TWR-AHG Stafford v. Rite Aid Corporation

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **George Carlos Aguilar**
  gaguilar@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,notice@robbinsllp.com,rsalazar@robbinsllp.com

- **Carey Alexander**
  calexander@scott-scott.com,carey@recap.email,kjager@scott-scott.com,efile@scott-scott.com

- **Bradley M. Beall**
  bbeall@rgrdlaw.com

- **Ethan Samuel Binder**
  ebinder@scott-scott.com

- **Erin Green Comite**
  ecomite@scott-scott.com,kjager@scott-scott.com

- **Hal D. Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Stuart A. Davidson**
  sdavidson@rgrdlaw.com,e_file_sd@rgrdlaw.com,jmiller@rgrdlaw.com,e_file_fl@rgrdlaw.com,sdavidson@ecf.courtdrive.com

- **Mark Jeffrey Dearman**
  mdearman@rgrdlaw.com,e_file_sd@rgrdlaw.com,MDearman@ecf.courtdrive.com,e_file_fl@rgrdlaw.com,AShingler@rgrdlaw.com

- **Gregory E. Del Gaizo**
  gdelgaizo@robbinsllp.com,notice@robbinsllp.com

- **Christopher Dufek**
  cdufek@huntonak.com

- **Neil K Gilman**
  ngilman@huntonak.com

- **Courtney Glaser**
  courtneyglaser@huntonak.com,melissagaston@huntonak.com,courtneyglaser@ecf.courtdrive.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,scott-scott@ecf.courtdrive.com,tharo@scott-scott.com,mwaligurski@scott-scott.com

- **Robert R Henssler , Jr**
  BHENSSLER@RGRDLAW.COM,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kelsey Hope**
  kelseyhope@andrewskurth.com

- **Kirk Hornbeck**
  khornbeck@HuntonAK.com,andersonb@huntonak.com

- **David William Mitchell**
  DavidM@rgrdlaw.com,slandry@rgrdlaw.com,e_file_sd@rgrdlaw.com,bomara@rgrdlaw.com,dwatts@rgrdlaw.com,ckopko@rgrdlaw.com

- **Ann Marie Mortimer**
  amortimer@huntonAK.com,johnsonm@huntonak.com

- **Brianne Michelle Reese**
  breese@huntonak.com

- **Amanda Marie Rolon**
  arolon@scott-scott.com

- **Sean C. Russell**
  srussell@scott-scott.com

- **Gerald L. Rutledge**
  glr1@aol.com

- **Charles E. Schaffer**
  cschaffer@lfsblaw.com,vjennings@lfsblaw.com

- **John Bruce Shely**
  jshely@huntonak.com,rstjulian@huntonak.com,melissagaston@ecf.courtdrive.com,mgaston@huntonak.com

- **Arthur L Shingler , III**
  AShingler@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Destiny T. Stokes**
  dstokes@hunton.com

- **William T Um**
  wum@jassyvick.com,mrios@jassyvick.com

- **Alfred G. Yates , Jr**
  yateslaw@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David              Charles Magagna                      , Jr
Levin, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
```